Thimes v. Stumpff.

JOSEPH THIMES v. M. L. STUMPFF.

HOMESTEAD — *Void   Contract — Voluntary   Payment — No   Recovery.*   The plaintiff made a contract agreeing to convey the tract of land occupied by himself and family as a homestead.   As a part of the purchase-price the defendant executed and delivered to plaintiff a promissory note for $200, and made a cash payment of $40.   The signature or consent of plaintiff's wife to the contract and sale was never obtained; no deed of conveyance was ever made to defendant by plaintiff and his wife, nor was the defendant ever given possession of the homestead.   Plaintiff brought suit to recover upon the promissory note given as a part of the purchase-price, and the defendant in his answer asks to recover the $40 which he paid.   *Held,* That the contract to convey the homestead, made without the consent of plaintiff's wife, is void, and that the note and money given and paid by the defendant as an advance payment on the homestead were without consideration.   *And also held,* That the defendant, having voluntarily paid the sum of $40 on such void contract, with full knowledge of all the facts and circumstances relating thereto, cannot recover it.

*Error from Coffey District Court.*

ACTION brought by *Thimes* against *Stumpff* to recover upon a promissory note for $200, executed by the defendant, May 23, 1882, and payable to the order of the plaintiff, on July 15, 1882, with interest at 8 per cent. per annum after maturity. The defendant set up as a defense, that the note was given without consideration, alleging that the note was given as an advance payment upon the following-described real estate, situate in Coffey county, Kansas, to wit: The southeast quarter of the southeast quarter of section 14, and all of the east half of the northeast quarter of section 23 lying north of the Neosho river, all in township 20, of range 13, containing 80 acres, more or less, which was owned by plaintiff, and which he, by a pretended contract in writing, dated May 23, 1882, signed by himself only, agreed to sell and convey to the defendant by a good and sufficient warranty deed; that the plaintiff was a married man, a resident of Kansas, and the head of a family, and with his family occupied the farm above described, as a homestead; that plaintiff's wife did not then or at any other time sign the pretended contract or consent to the sale of the homestead, made by plaintiff to defendant; that no conveyance of the land was ever made by plaintiff and his wife to defendant, and that the only consideration for the promissory note as well as for a cash payment of $40, made at the time the note was given, was said pretended contract, which, not being signed by his wife nor made with her consent, was wholly worthless and void; and averring that he is entitled to recover the sum of $40, paid by him as aforesaid upon the land, and praying a judgment against the plaintiff therefor.

The following is a copy of the contract referred to, and which was made a part of the defendant's answer:

"HARTFORD, KANSAS.

"This is to certify that I have this 23d day of May, 1882, bargained and sold to M. L. Stumpff the following-described

land, situated in Coffey county and state of Kansas, to wit: The southeast fourth of the southeast quarter of section fourteen, and all of the east half of northeast fourth of section twenty-three north of the Neosho river, being all in township twenty, of range thirteen, containing eighty acres more or less, for the consideration of twenty-six hundred dollars, forty dollars of which I hereby acknowledge in cash, and the receipt of one note for two hundred dollars, due July 15, 1882; and upon the full payment of the above twenty-six hundred dollars, I further agree, between the first day of September and the first day of October, 1882, to make and deliver to said M. L. Stumpff, his heirs or assigns, a good and sufficient warranty deed to the above-described land, with the appurtenances thereto, except what fence posts are made and piled upon said premises, and the growing corn crop, which is to be taken off of said premises by the 25th of December, 1882, reserving also the use of all the vegetables grown on said premises necessary for the use of his own family until possession is given of said premises to said M. L. Stumpff.

(Signed)　　J. Thimes.

"Executed in presence of W. J. Combs, justice of the peace."

At the January Term, 1884, the cause was tried by the court without a jury, and the following findings of fact and conclusions of law were made by the court:

"1. On May 23d, 1882, and prior thereto, the plaintiff was a married man, resident of the state of Kansas, the head of a family, and owned and with his family occupied, as a home, the southeast quarter of the southeast quarter of section 14, and all the east half of the northeast quarter of section 23 north of the Neosho river, all of which lands were in township 20, range 13, in Coffey county, Kansas, and which formed one contiguous tract of land less than 160 acres, and not in the corporate limits of a town or city; that at and prior to said 23d day of May, said plaintiff and his family had no other home or residence, and owned no other lands in that vicinity.

"2. On May 23d, 1882, plaintiff made and entered into a written contract with the defendant to the effect that the plaintiff would, between September 1st and October 1st, following, convey said premises to the defendant upon payment of $2,600; at the time of making said contract defendant paid

plaintiff $40, cash, and gave the note sued on for $200, said $240 being a part of the $2,600.

"3. The defendant failed to obtain means that he expected, and the matter was by consent deferred from time to time until October 8th, 1882, when defendant informed plaintiff that he was ready to comply with the contract, and would have the money at Hartford, Kansas, on the next day. The plaintiff accordingly took his wife and went to Hartford to receive the money and to execute the deed. Defendant failed to get the necessary money as he expected, and nothing was done, and since that time nothing has been done by either toward the completion of said contract. The defendant has failed to pay the money agreed upon, and the plaintiff has never executed and delivered said deed, or offered to do so, except as aforesaid.

"4. The only consideration ever received by the defendant for said $40, cash, and for said note sued upon, was said written contract aforesaid. Said contract was signed by said plaintiff alone. Neither the defendant nor plaintiff's wife signed it, and it does not appear that plaintiff's wife ever consented thereto. Previous to and at the time of the execution of the written contract, defendant lived and boarded in plaintiff's family. Afterward, and before the trip to Hartford, matters concerning the compliance of the terms of said contract were talked over by plaintiff and defendant in the presence and hearing of plaintiff's wife, but it does not appear that she either objected or consented thereto, except as aforesaid. At the time the written contract was executed, there was some talk as to the propriety of drawing a duplicate for plaintiff to hold, but it was finally agreed that it was unnecessary, inasmuch as the $40, cash, and the $200, had been paid in advance by the defendant."

The court found as a conclusion of law, that the defendant ought to recover $40 and costs. Thereupon judgment was rendered in favor of the defendant for the sum of $40, together with his costs. The plaintiff brings the case to this court for review, upon the findings of fact, conclusion of law, and the judgment found and rendered by the court below.

*Silas Fearl*, and *C. N. Sterry*, for plaintiff in error.

*Redmond & Junkins*, for defendant in error.

The opinion of the court was delivered by

JOHNSTON, J. : The findings of fact made by the court be-
low are accepted by plaintiff, without complaint.   They show
that the promissory note sued on in this action, together with
$40 in money, was delivered and paid by the defendant as a
partial payment upon an eighty-acre farm which the plaintiff
attempted to sell and convey to the defendant.   The plaintiff
was a married man, a resident of the state, the head of a fam-
ily, and with his wife and family occupied the land as a home-
stead.   The written instrument or paper by which the plaintiff
agreed to sell the homestead for the sum of $2,600, and wherein
he acknowledged as a partial payment of the purchase-price
of the land, the receipt of the promissory note for $200, and
the $40 in money above mentioned, and in which he agreed
upon the payment of the remainder of the purchase-price, to
make a good and sufficient warranty deed to the defendant, was
not executed nor signed by his wife, nor did she ever consent to
such sale.   No deed executed by plaintiff and his wife to the
land was ever delivered or tendered to the defendant, nor was
he ever put in possession thereof.   It appears that the only
consideration which the defendant ever received for the prom-
issory note and the $40 payment, was the contract or paper
signed alone by plaintiff, agreeing to sell the homestead.

The court below held, and we think correctly, that the con-
tract made by plaintiff was void, and that the note and money
given and paid thereon by the defendant were without con-
sideration.   The constitution of the state, as well as the stat-
ute relating to exemptions, provides that the homestead shall
not be alienated without the joint consent of the husband and
wife, when that relation exists.   In interpreting and apply-
ing the above provisions, it has been uniformly and consist-
ently ruled by this court that so long as the premises are
impressed with the homestead character, no lease, mortgage,
deed, or other contract, intended to alienate the homestead or
interfere with its use and occupancy as a homestead, made and

executed alone by the husband and without the consent of the wife, is valid or effectual for any purpose whatsoever.

In an early case, Mr. Justice VALENTINE, in construing our homestead laws, stated that —

"No incumbrance or lien or interest can ever attach to or affect the homestead, except the ones specially mentioned in the constitution. . . . No alienation of the homestead by the husband alone, in whatever way it may be effected, is of any validity; nothing that he alone can do or suffer to be done can cast the slightest cloud upon the title to the homestead; it remains absolutely free from all liens and incumbrances except those mentioned in the constitution." (*Morris v. Ward*, 5 Kas. 244.)

This interpretation and just ruling, so early made, has been followed in all cases in this court where the question of the non-concurrence of the wife to an alienation of the homestead has arisen. Thus it was held, that when the wife is compelled to sign a deed to the homestead, by threats of her husband, the consent required by law has not been given; that under the peculiar provisions of our homestead laws, the wife has an existing interest in the homestead, the occupation and enjoyment of which is secured to her against any act of her husband or creditors without her consent. (*Helm v. Helm*, 11 Kas. 19.)

In *Moore v. Reaves*, 15 Kas. 150, the husband and wife occupied and resided upon a tract of land purchased from a railroad company, and which was held by them under a contract from the company that it would convey the land to the purchaser upon full payment of the purchase-price. The husband, for a valuable consideration, without the knowledge or consent of his wife, assigned his claim to the land by a written indorsement made upon the back of the contract, and the court ruled that real estate so held and occupied was a homestead, and that as the assignment of the contract was without the consent of the wife, it was absolutely void.

It has also been held in a case where the husband undertook by a written agreement to lease the homestead for a term of five years and give possession thereof to his tenant without

the consent of the wife, that whenever· the lease of a homestead, although the title thereto is held by the husband, attempts to interfere with the use or occupancy of the homestead, the assent of the wife is necessary, and lacking that, the lease is void, and the party claiming thereunder acquires no.right of possession or any estate in the homestead. (*Coughlin v. Coughlin,* 26 Kas. 116. See also *Dollman v. Harris,* 5 Kas. 597; *Anderson v. Anderson,* 9 id. 112; *Monroe v. May,* 9 id. 476; *Ayres v. Probasco,* 14 id. 190; *Chambers v. Cox,* 23 id. 393; *Ott v. Sprague,* 27 id. 620.)

In the light of these authorities, it is clear that the contract in this case, made by plaintiff alone, is void. The learned counsel for the plaintiff urge that the plaintiff should be permitted to make a contract agreeing to procure the consent and signature of his wife to a conveyance of the homestead. Without determining whether such a contract would be effectual or binding on the plaintiff, or would render him liable for damages in case of his failure, it will be seen by an examination of the contract in the case at bar, that the plaintiff agreed, not that he would endeavor to obtain the consent and signature of his wife, but that he would absolutely convey the homestead to the defendant by a good and sufficient warranty deed upon the payment of the remainder of the purchase-price by the defendant. If a party cannot convey the homestead by mortgage or deed.without the consent of his wife, he certainly cannot make a contract agreeing to convey that will be valid or binding without her concurrence. The contract being void, there was therefore no consideration for the note and money delivered and paid by the defendant to the plaintiff, and the district court rightly held that the plaintiff was not entitled to recover.

Another point made by the plaintiff is, that if the contract is void, the court erred in its conclusion of law that the defendant was entitled to recover the $40 voluntarily paid by him upon such void contract. In the purchase of the land, it was the duty of the defendant to ascertain and know its

status, whether it was a homestead, and the kind of title which the plaintiff acting alone could give him. The defendant in his answer alleges that when this transaction occurred he was a "new-comer" in the state, and was ignorant of the laws of Kansas regarding alienation of homesteads, and that the plaintiff knew of his ignorance and contrived to cheat and defraud the defendant by leading him to believe that the contract made by plaintiff was valid and effectual for the purpose for which it was made. The court below, however, does not find that there was any deception or fraud practiced by the plaintiff, and the ignorance or mistake of law by the defendant cannot avail him. He is presumed to know the law. There was no mistake of fact upon his part. The findings made by the court below disclose that at the time the contract was made, and prior thereto, the defendant lived and boarded in plaintiff's family. He knew that the land he was contracting to purchase was occupied as a residence by the plaintiff and his family, and he therefore knew, or should have known, that the sale or contract to sell his farm so occupied as a homestead would be void and valueless without the consent of plaintiff's wife. It is the duty of a party who purchases or contracts to purchase a homestead occupied by the owner and his family, to obtain the joint consent of the owner and his wife. By the findings there was no fraud in the transaction upon the part of either plaintiff or defendant; both were acquainted with all the facts relative thereto. There being no compulsion, fraud, or mistake of fact, the payment of the $40 by the defendant upon this void contract was entirely voluntary, and we think cannot be recovered. (*Phillips v. Jefferson Co.*, 5 Kas. 412; *Wabaunsee Co. v. Walker*, 8 id. 431; *K. P. Rly. Co. v. Comm'rs of Wyandotte Co.*, 16 id. 587; *Sapp v. Comm'rs of Brown· Co.*, 20 id. 245; *Lamborn v. County Commissioners*, 97 U. S. 185.)

We conclude that the court erred in its conclusion that defendant ought to recover $40; and the case will therefore be remanded to the court below with instructions to modify the judgment by striking out the $40 so adjudged against plaintiff,

and to render a judgment in favor of defendant for costs in the district court. The judgment thus modified will be affirmed. The costs in this court will be divided.

All the Justices concurring.