GEORGE D. ENGLE v. LEVANT E. WHITE, ADMINISTRATOR OF THE ESTATE OF JAMES ENGLE, DECEASED, ET AL.

*Land contract—Construction—Specific performance—Homestead.*

1. A father owned and occupied a farm consisting of three government subdivisions of 40 acres each. He also owned an adjoining parcel of land containing 69 acres. Having become incapacitated for working his farm, and to induce a married son, who had formerly lived with him, to return to the farm, an agreement in writing was entered into between them which provided that the father was to give the 69 acres to the son; that the latter was to work the farm on shares, help to keep it in good repair, and care for his father and mother; and that, upon the performance of the agreement by the son, he should, at his father's death, have a deed of the farm. And it is held that it is evident that in consideration of the son's return to the farm, his agreements regarding the same and the care of his parents, it was intended that he should have absolute control over the 69 acres during the life of his father, and at his death should take the legal title to the farm also.[1]

2. The son moved upon the 69 acres, and for 18 years, during which time his mother died and his father remarried and again became a widower, did all that was required of him under the contract, without complaint upon the part of the father. And in a suit by the son for specific performance of the agreement it is held that an objection upon the ground of the indefiniteness of the obligations assumed by the son is without force, as the parties have, by a long course of dealing and conduct, made certain what otherwise might be deemed uncertain.

3. The buildings were situated upon one of the 40-acre subdivisions. And it is held that said 40 acres may be treated as the father's homestead; that as no dower rights are involved, and the remainder of the farm is capable of severance from said homestead, and the contract itself treats the 69 acres as a separate parcel, the contract may be held operative as to all of the

---

[1] See note to *Krell v. Codman*, 14 L. R. A. 860, regarding agreements to pay money or give property after the death of the promisor.

land except the homestead, and to that extent is enforcible in equity.

Appeal from St. Joseph. (Loveridge, J.) Argued October 31 and November 1, 1894. Decided February 12, 1895.

Bill for specific performance of a land contract. Both parties appeal. Decree modified. The facts are stated in the opinion.

*R. R. Pealer* and *George E. Miller*, for complainant.

*H. P. Stewart, Charles A. Sturges,* and *Boudeman & Adams,* for defendants.

McGRATH, C. J. James Engle, who died after decree herein, was in 1873 the owner of adjoining parcels of land; one containing 120 acres, upon which he and his wife lived, and the other containing 69 acres, upon which there was a dwelling and other buildings. He was then 57 years of age, and, having met with an accident which incapacitated him for active work on the farm, to induce complainant, his son, to return to the farm, the following agreement was entered into:

" SCHOOLCRAFT, KALAMAZOO Co., October 27, 1873.

"James Engle does hereby agree to give to his son, George D. Engle, the 69 acres fractional, being known as the timber land. He does further agree that he shall work the 120 acres of land on shares where he now lives, and is to help to keep the place in good repair, take care of his father and mother, and administer to their wants the necessaries of life; providing that George D. Engle fulfills on his part, at the end of his death he shall have a deed of the old homestead 120 acres of land.

" George D. Engle does hereby agree to furnish to James Engle, his father, his wood and timber necessary to be used on the 120 acres of land where he now lives. He further agrees to work the place on shares, and help to keep the place in good repair. He further agrees to admin-

ister to their wants the necessaries of life when called upon.

"JAMES ENGLE.
"GEORGE D. ENGLE.

"Witnessed by
    "ANG. ENGLE.
    "GEO. ACRES."

Complainant entered into possession of the 69 acres, and has since continued to reside thereon, his father continuing to reside on the 120 acres until his death.   In 1892, James Engle undertook to lease the 69 acres to a third party, gave complainant here notice to quit said premises, and filed a bill to restrain the son from cutting timber upon the 69 acres, whereupon the present bill was filed, setting up the contract, possession thereunder for 18 years, and performance of its terms, and asking that the right to possession be protected, and "a specific performance of said contract be decreed, in so far as the same can now be done."

The father denied that he ever signed the contract, and a circumstance throws some doubt upon its execution, but all the other circumstances point unerringly to the existence of a contract such as the one set up.   The son and family removed to the farm.   They moved into the house upon the 69 acres.   In the bill of complaint filed by the father, he says:   "While defendant has been working 120 acres of your orator's land on shares, he has had the entire control and income from the balance of your orator's land." The son did just what the contract required him to do. For 18 years, and without complaint on the father's part, the son cropped the 120 acres, kept the place in good repair, furnished the necessary wood and timber from the 69 acres, and attended to the wants of the parents.

The contract is inartificially drawn, but, keeping in view the circumstances under which it was entered into, it is

evident that in consideration of complainant's return to
the farm, his further agreement as to the 120 acres and as
to his attentions to the father and mother, it was intended
that he should have absolute control over the 69 acres
during the life of the father, and at his death should take
the 120 acres also.    The contract does not say when the
69 acres are to be conveyed, but evidently the parties con-
strued it to mean that complainant should take the legal
title at the death of the father.

Respecting the indefiniteness of the obligations assumed
by the son, it appears that for 18 years, during which
time complainant's mother died, and the father afterwards
remarried, and subsequently the second wife died, the rela-
tions between the parties remained the most amicable.
The son did all that was required of him.    The parties
have, by a long course of dealing and conduct, made cer-
tain what might otherwise be deemed uncertain; and, so
far as this record shows, complainant was ready and will-
ing to continue to perform the contract on his part.

At the time of the execution of the contract, the home-
stead of the father and mother was upon the 120 acres.
The court below held the contract valid as to the 69
acres, but that under the rule laid down in *Phillips v.
Stauch*, 20 Mich. 369, and *Hall v. Loomis*, 63 Id. 709,
the contract, as to the homestead, was a nullity, and
would not be enforced in equity as to the surplus.    The
court was right in holding the contract void as to the
homestead.    That infirmity did not, however, affect the
parcels capable of severance.    The contract itself treats the
69 acres as a separate parcel, and complainant was put
into possession thereof.    The 120 acres consist of the S.
½ of the S. E. ¼ and the N. W. ¼ of the S. E. ¼.    The
buildings are upon the N. W. ¼ of the S. E. ¼.    That 40
may be treated as the homestead, and the contract

declared operative as to the other two 40s and the 69 acres. In the cases cited the question of dower was also involved. In one case, severance was impossible, and in the other, impracticable. There is no good reason why, under the circumstances here presented, the whole matter may not be disposed of in this proceeding.

The decree will be modified accordingly, with costs to complainant.

The other Justices concurred.