## MUNDY v. SHELLABERGER.

(Circuit Court, W. D. Missouri, W. D. April 22, 1907.)

No. 2,963.

SPECIFIC PERFORMANCE—HOMESTEAD—RIGHTS OF WIFE.

Rev. St. Mo. 1899, § 3616 [Ann. St. 1906, p. 2034], establishes the homestead of every housekeeper or head of a family, and declares that the husband shall be incapable of selling the homestead, and every such sale shall be void, unless the wife joins in the conveyance. *Held* that, where

a husband contracted to transfer his homestead and other real estate in exchange for certain corporate stock, in which contract his wife did not join, and the homestead constituted one-fourth in value of the property agreed to be transferred, the contract was invalid, and specific performance thereof would not be decreed.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 44, Specific Performance, § 33.]

John J. Jones, Halbert H. McCluer, John T. Harding, and Omar E. Robinson, for complainant.

M. A. Fyke and A. S. Marley, for defendant.

PHILIPS, District Judge. This is a suit in equity for the specific performance of a contract for the conveyance of certain real property situate in Kansas City, Mo. The contract is expressed in a proposition from the complainant to the defendant, of date June 18, 1904, whereby the complainant agreed to deliver to the defendant 100,000 shares of the Logan Oil & Gas Company stock, of the par value of $1 each, fully paid, and nonassessable; also 60,000 shares of the Northern Petroleum Company stock, of the par value of $1 each, fully paid, and nonassessable; and 13,125 shares of the Clermont Oil Company stock, par value $1, fully paid, and nonassessable, for the following described property, alleged to be owned by the defendant:

"Your Winnifred Court, 541 Brooklyn Ave., upon which are 16 brick cottages, and your residence, 135 Park Ave. Said properties free of all mortgages. You to retain possession of your residence for 90 days if necessary, free of rent. Deeds for such properties to be delivered within ten days from this date, or as near that date or sooner if possible. You to bring abstracts down to date. All stocks I agree to deliver to you inside of 10 days."

Which proposition, the bill alleges, the defendant then accepted.

The answer tendered various defenses to the bill, among which is that the property designated as the defendant's residence, 135 Park avenue, was the homestead of the defendant, who then had, and yet has, a wife living with him on said resident property. It is conceded by counsel for complainants that the resident property at the time of the making and acceptance of the proposition was and now is the homestead of the defendant, with the wife living thereon, and that his spouse did not join in the contract. This fact the complainant knew when the contract was entered into, as he theretofore examined the property and it is stated in his written proposition that the Park avenue property was then the defendant's residence. The statute of Missouri (section 3616, Rev. St. 1899 [Ann. St. 1906, p. 2034]), establishes the homestead of every housekeeper or head of a family which, in cities like Kansas City, shall not include more than 18 square rods of ground, or exceed the total value of $3,000. It then expressly declares that:

"The husband shall be debarred from and incapable of selling, mortgaging or alienating the homestead in any manner whatever, and every such sale, mortgage or alienation is hereby declared null and void: Provided, however, that nothing herein contained shall be so construed as to prevent the husband and wife from jointly conveying, mortgaging, alienating, or in any other manner disposing of such homestead, or any part thereof."

Such statutes are in recognition and enforcement of the public policy of the state to secure to the family the beneficent protection of the homestead law. The courts are quite in harmony under similar statutes in declaring that all sales or contracts looking to the alienation of the homestead by the husband without the co-operating assent of the wife are null and void. Newton v. Newton, 162 Mo. 173–183, 61 S. W. 881. It would be quite absurd to say that the statute did not apply as well to a contract of sale as to an alienation by deed, as the contract is made the basis for the claim to a specific performance on which the court may compel the execution of the deed or make its alternative decree. Under a like declared policy of the state the Supreme Court of Kansas, in Thimes v. Stumpff, 33 Kan. 53, 5 Pac. 431, said:

"The Constitution of the state, as well as the statute relating to exemptions, provides that the homestead shall not be alienated without the joint consent of the husband and wife, when that relation exists. In interpreting and applying the above provisions it has been uniformly and consistently ruled by this court that, so long as the premises are impressed with the homestead character, no lease, mortgage, deed, or other contract, intended to alienate the homestead or interfere with its use and occupancy as a homestead, made and executed alone by the husband and without the consent of the wife, is valid or effectual for any purpose whatsoever. * * * If a party cannot convey the homestead by mortgage or deed without the consent of his wife, he certainly cannot make a contract agreeing to convey that will be valid or binding without her concurrence."

The Missouri homestead law is well understood to have been fashioned after that of the state of Vermont, where it is held that a mortgage contract made by the husband alone on the homestead was void ab initio for all purposes when made, because the wife did not join in its execution. Martin v. Harrington, 50 Atl. 1074, 73 Vt. 193, 87 Am. St. Rep. 704. That the rule applies as well to a contract to convey as to a deed of alienation is generally recognized. Barton v. Drake, 21 Minn. 299; Law v. Butler, 47 N. W. 53, 54, 44 Minn. 482, 9 L. R. A. 856. The answer made to this situation by complainant's counsel is that, as there is no homestead interest in the Winnifred Court property, the contract is susceptible of specific performance as to that, and that, as to the homestead lot, a court of equity can ascertain the value thereof and decree that as damages to the complainant. The court makes no question of the general rule in the proceeding for specific performance of contracts for the sale of several parcels of land that where as to one of the parcels, separable from the others, the vendor is unable to specifically perform, as where he has no title at the time when the decree is reached, if the vendee be willing to accept that part to which the vendor has an acceptable title, the chancellor may compel performance as to that, and ascertain the amount and award damages as to the residue. But, does the rule obtain in this case where the contract as to the one-fourth part in value of the premises is absolutely void, being in contravention of the public policy of the state? When the text-writers and the courts speak of the right to commute in damages as to a part of the contract not susceptible of specific performance, they have in mind a contract of a party, sui juris, which he had a right to make, not forbidden by the law, and which he could perform

if he had the title, or where he has by some act disqualified himself from performance. The ascertainment and awarding of damages in lieu of the specific thing in equity presupposes a contract valid, and one enforceable in an action at law. Whether the suit be in equity for specific performance with the incidental jurisdiction to proceed to the complete adjustment of the subject-matter of the controversy by awarding damages as to that part of the property embraced in the contract not capable of being conveyed for want of title, or the like, or whether it be an action at law for damages consequent upon failure to entirely perform, the underlying basis of the right to relief is the existence of a valid contract. It is inconceivable to the judicial mind how a contract void, especially when it contravenes the public policy of the state where made, can ever form the basis of a suit recognizable either in equity or law.

While there may be found some utterances by courts, based upon peculiarities of the local statute, where an action for damages may lie in such cases, they are so opposed to correct principles and the weight of authority as not to commend them to my approval. The following authorities, in effect, hold that a contract growing out of the husband's attempt to alienate the homestead without the wife's concurrence cannot form the basis of relief for damages: Thimes v. Stumpff, supra; Hodges v. Farnham, 49 Kan. 777, 31 Pac. 606; Webster v. Warner et al., 78 N. W. 552, 119 Mich. 461; Weitzner v. Thingstad, 55 Minn. 244, 56 N. W. 817; Cowgell v. Warrington, 66 Iowa, 666, 24 N. W. 266; Barnett v. Mendenhall, 42 Iowa, 296; Wap. Homestead, 384–394, and note 6; 15 Amer. & Eng. Enc. of Law (2d Ed.) 670; Miller v. Gray, 68 S. W. 517, 29 Tex. Civ. App. 183; Meek v. Lange, 91 N. W., loc. cit. 696, 65 Neb. 783.

In Curry v. Whitmore, 110 Mo. App. 204, 84 S. W. 1131, the writer of the opinion, in a single sentence, gives expression to the view that damages might be awarded on a contract to convey the homestead; but as the assertion is not buttressed by other authority or enforced by any plausible argument, the utterance, not coming from the highest court of the state, while it may be entitled to respectful consideration, does not command obedience. The Supreme Court of Michigan, in Phillips v. Stauch, 20 Mich. 369, under a homestead law with provisions similar to the Missouri statute, held that a deed by the husband alone to premises which included the homestead would not only have been voidable merely as to that (i. e., as to the homestead interest), but would have been wholly void; and that a contract by the husband to make such a conveyance intended to have a direct and present operation will not be specifically enforced. The court then proceeding to make a practical application of the law to the case in hand said:

"The farm in question in this case contains a little over 92 acres, and is valued by complainant at a trifle over $6,340, and by the defendant at about $4,600. To give relief on the principle of compensation as contended for, would exempt from the conveyance the homestead right of the value of $1,500, and embracing the dwelling house, and would leave the balance of the premises subject to the contingent right of dower of defendant's wife. This would necessarily exclude from the conveyance a very material part of the subject-matter of the contract, and almost certainly result in great pecuniary injury to all parties interested. The adjustment of the compensation would be quite

difficult in a case like this, and especially that part of it founded on the contingent dower right. That is quite different from the case where the right is consummate. The interest of defendant's wife would also be exposed to some detriment by partial alienation. These considerations taken together inspire the opinion that the case is not one in which the court ought to compel a conveyance with compensation."

This ruling was followed in Hall v. Loomis, 63 Mich. 709, 30 N. W. 374, aptly expressed in the syllabus as follows:

"A contract for the sale of land occupied as a homestead, not executed by the wife, is a nullity, so far as the homestead is concerned, and the fact that the value of the property exceeded the statutory limit will not render the contract enforceable as to the residue."

There is another decision by the Supreme Court of Michigan (Engle v. White, 104 Mich. 15, 62 N. W. 154), to which attention may be directed, but which is quite distinguishable from the case at bar. In that case, a father owned and occupied a farm consisting of three subdivisions of 40 acres each, and, in addition thereto, he owned 69 acres of adjoining land. Becoming incapacitated to operate the farm, to induce his son to return to the farm, he entered into a written agreement with him, which provided that the father was to give to the son 69 acres, and the latter was to work the farm on shares, keep it in repair and care for his father and mother, with the promise that, at the father's death, the son was to have a deed to the farm. The son moved upon the 69 acres, and for 18 years, during which time the mother died, and the father married and again became a widower, fully performed the terms of the contract. The buildings occupied as a homestead were situated upon one of the 40-acre subdivisions, which was treated as his homestead. Disagreements arising between the father and son, the father sought to eject him from possession of the 69 acres, whereupon the son filed against him a bill in equity for specific performance, which only asked the court to decree specific performance "in so far as it can now be done." Inasmuch as no question of dower interest was involved or to be considered, and no right or interest was sought to be enforced as to the 40-acre tract embracing the homestead estate, and the other tracts were entirely disconnected therewith, it was held that decree for specific performance as to the independent tracts might go, the complainant presumably accepting the same in full satisfaction of his rights.

But in the case at bar, not only are the marital rights of the wife of the defendant involved, but the bill includes the homestead in its prayer for relief; and, on the hearing at bar, the court inquired of counsel for complainant if he was willing to take decree of specific performance for the Winnifred Court property alone, and he promptly answered "no." This bill cannot, for the reasons above given, be sustained in its entirety. Beyond this, on the whole merits the inclination of my mind is that the exercise of a sound discretion on the part of a chancellor might well warrant a refusal to specifically enforce the contract. In view, however, of the conclusion reached on the first proposition involved, further discussion will not be pursued.

It results that the bill of complaint must be dismissed.