## LYMAN S. CURRY, Appellant, v. ALVA WHITMORE, Respondent.

**Kansas City Court of Appeals. February 6, 1905.**

1. **REAL ESTATE BROKER: Commission: Evidence: Jury.** Where a real estate broker produces a purchaser ready, able and willing to consummate a sale he has earned his commission; and on review of evidence showing a somewhat unusual manner of collecting the commission so that the vendee assumes the same, without understanding the object thereof, it is held sufficient to send the question of the vendee's assumption to the jury, though the sale in fact did not occur by reason of the vendor's default.

2. ——: ——: **Homestead: Failure to Complete.** The fact that the land sold is a homestead and the wife refuses to join in the deed, will not relieve the landowner from liability to pay the commission when earned by the broker.

Appeal from Linn Circuit Court.—*Hon. John P. Butler,* Judge.

REVERSED AND REMANDED.

*West & Bresnehen* and *Crawley & West* for appellant.

(1) Under either showing of facts Curry paid the amount of the note to Guest for Whitmore, and Whitmore received credit for it and agreed to repay it. Every principle of law that would hold Whitmore to his contract under one statement of the facts would hold him under the other; so we can see no possible reason why the same result should not follow, and the judgment of the trial court be reversed and the cause remanded for a new trial. (2) The homestead law has no more to do with this case than has the law of gravitation; and learned counsel for respondent has labored in vain if he thought for a moment any member of this court or counsel for appellant would consider seriously his insistence on that proposition.

*A. W. Mullins* for respondent.

(1) The contract made by Charles Guest to the defendant was signed by Charles Guest only; his wife Mary Guest was not a party to it. The land so contracted was the homestead of said Charles Guest, his wife and their family of children. R. S. 1889, sec. 3616. And the plaintiff's contention is that the $1,100 he alleges was to be paid by defendant to plaintiff was a part of the purchase price of the land. Such payment would have been wholly without consideration, even if there had been any contract or agreement between them that defendant should make such payment. Davis v. Watson, 89 Mo. App. 15; Pursley v. Good, 94 Mo. App. 382; Pershing v. Canfield, 70 Mo. 140; McLeod v. Snyder, 110 Mo. 298; Mastin v. Grimes, 88 Mo. 490; Wellman v. Dismukes, 42 Mo. 101; Dietrich v. Franz, 47 Mo. 85. (2) The court, at the close of all the evidence, properly instructed the jury to make their verdict for defendant. If it had been possible for the plaintiff to have obtained a verdict in his favor from the jury, then

under the pleadings and all the evidence it would have been the manifest duty of the court to have set aside such verdict. Therefore, the peremptory instruction of the court to the jury that the plaintiff was not entitled to recover in this action and for the jury to make their verdict for the defendant, was properly given. Bank v. Bank, 151 Mo. 320; Powell v. Railroad, 76 Mo. 82; Jackson v. Hardin, 83 Mo. 186; Reichenbach v. Ellerbe, 115 Mo. 588; Mexico v. Jones, 27 Mo. App. 534.

ELLISON, J.—Plaintiff brought this action against defendant to recover the sum of eleven hundred dollars. At the close of all the evidence the trial court gave a peremptory instruction for defendant.

Since the case went off on a demurrer we will treat it from the standpoint of the evidence in behalf of plaintiff, without regard to its being contradicted by the evidence in behalf of defendant. It appears that plaintiff and one, Guest, entered into a contract whereby it was agreed that if plaintiff would find a purchaser for Guest's farm of 110 acres in Chariton county the latter would give the former all over the price of $35 per acre which the purchaser would pay. That afterwards plaintiff produced defendant (who was ready, able and willing to buy) as a purchaser for the farm at the price of $45 per acre, which price would make due to plaintiff from Guest $10 per acre, or the total sum of $1,100. As soon as Guest came to an agreement with defendant the latter made him a cash payment of $1,000 and was to pay him the balance of $3,950 on the following first day of March, a title bond being executed by Guest.

It was then agreed between plaintiff and Guest that the former would give to Guest his note for $1,100 (the amount of plaintiff's commission) due plaintiff as commission, and that Guest would accept such note as a payment on the balance of $3,950 due him from defendant as balance of purchase-money on the farm. Defendant was then informed that his vendor, *Guest,* had

agreed to accept plaintiff as paymaster for $1,100 and he thereupon agreed that if plaintiff paid Guest that sum for him he would pay it to plaintiff on the first of March when the balance of purchase-money was to be paid. Plaintiff did execute his note to Guest for $1,100 and Guest thereupon accepted it as a payment on the farm and indorsed on the back thereof that it was paid ''as so much of the purchase price of my farm.'' Defendant was present when the transaction took place and agreed to it, at the same time accepting a credit on the bond for deed (which Guest gave him) of $2,100. That sum being made up of the $1,000 cash he paid himself and the $1,100 paid for him by plaintiff in the manner stated.

This sale of the land was not consummated by deed and it seems to have been agreed to be annulled by Guest and defendant. Among other reasons assigned for this was that Guest's wife refused to execute a deed. Guest and defendant then entered into another contract, ignoring plaintiff, whereby the former sold his land to the latter for a less price.

The foregoing is not the evidence in detail, but it is the substance and effect of plaintiff's showing. It undoubtedly entitled plaintiff to have the case submitted to the jury.

It is true that the agreement between plaintiff and Guest whereby the former gave his note to Guest for $1,100, the amount of his commission, and Guest immediately cancelling it by indorsing on it that it was a payment of so much of the purchase price on the land and handing it back to plaintiff, was rather odd, unusual and indirect, yet, things represented which are unusual and indirect are not necessarily untrue. It is probable that that agreement between Guest—the owner of the land—and plaintiff—his agent—to sell it, was intended as a means of plaintiff collecting his commission out of the balance of purchase money yet to be paid, and of preventing defendant from knowing

that he was paying for the land ten dollars per acre more than Guest was willing to take for it. But that would not alter the legal rights of the parties. The contract between Guest and plaintiff whereby the former agreed to pay the latter all over a certain price per acre was a valid contract. And when plaintiff produced defendant to Guest ready, able and willing to buy, and the failure to consummate the sale came about, not by plaintiff's fault, but through a refusal of Guest —or his wife—to sign a deed, Guest's liability to plaintiff became fixed.

It is, however, said by defendant that the land was Guest's homestead and that he could not sell it without his wife's consent. Neither can a husband sell any of his other lands and make perfect title without his wife's consent. But neither of these conditions will relieve him of liability on his contract for the sale of such lands. That is a matter he should think of and provide against at the time he enters into his obligation.

The judgment will be reversed and the cause remanded.

All concur.