## JOHN E. YOUNG, Appellant, v. CONRAD RUHWEDEL, Respondent.

### Kansas City Court of Appeals, June 18, 1906.

1. **REAL ESTATE BROKER: Statute of Frauds: Principal and Agent.** No contract for the sale of land made by an agent will bind the principal unless the agent is authorized in writing as the relation of principal and agent does not confer authority to bind the principal.

2. ————: ————: ————: **Consideration: Homestead: Contract of Sale: Able Purchaser: Premature Action.** Evidence relating to a contract between a broker and a landowner shows: (1) that the contract was valid though not in writing and amounted to the enlistment of services of the agent to assist the owner in affecting a sale; (2) that the agreement was not in the nature of a roving option to buy land but the relation was fiduciary; (3) that the contract was supported by sufficient consideration—the agent's agreement to perform the required service; (4) that though the property was a homestead and the contract was with the husband, the wife's refusal to sign the deed would not excuse the land-owner from accepting the produced purchaser; (5) that a written contract signed by the purchaser though not by the land-owner was a sufficient production of purchaser since he could have been held for damages on his failure to comply therewith at the election of the owner; (6) that the evidence as to the purchaser's ability was conflicting and it was one for the triers of fact and not of law for the court; (7) that the suit was not prematurely brought since the contract was for the payment of the commission out of the first money received; (8) that a demurrer to evidence was properly refused.

3. ————: **Measure of Damages: Contract.** *Held,* the measure of damages for the land-owner's refusal to accept the proffered purchaser is fixed by the terms of the contract.

4. ————: **Commission: Able Purchaser: New Trial: Duty of Court.** Where there is a conflict of evidence as to ability of the produced purchaser and the trial judge believes the verdict against the weight of evidence he not only has the discretion but fails in his duty if he does not set the same aside.

5. ————: ————: ————: **Broker's Offer.** The broker's offer to pay deferred payments in cash will not cure the purchaser's inability to fulfill the contract since it adds in no way to his ability and has the effect of changing the terms of his contract with his principal.

Appeal from Randolph Circuit Court.—*Hon. Alexander H. Waller*, Judge.

AFFIRMED.

*P. H. Cullen, J. W. Delventhal* and *E. Rosenberger & Son* for appellant.

(1)   A real estate agent is entitled to his commission, although his authority is not in writing.   Gerhardt v. Peck, 42 Mo. App. 644.   (2)   The contract of purchase signed by Young as agent for defendant, and also signed by Snyder was binding on Snyder at the election of the defendant.   Real Estate Co. v. Ruhlman, 68 Mo. App. 503; Huggins v. Hearne, 74 Mo. App. 86.   (3) When a real estate agent finds and produces a purchaser willing and able, who offers to make a purchase according to the terms of the employment, or when the agent receives a valid contract of purchase signed by a person who is able to perform it, or is financially able to answer in damages in case he should make default, the real estate agent is entitled to his commissions. Hayden v. Grillo, 35 Mo. App. 647; Hayden v. Grillo, 42 Mo. App. 1; Gerhardt v. Peck, 42 Mo. App. 644; Chipley v. Leathe, 60 Mo. App. 15; Hackman v. Gutweiler, 66 Mo. App. 244; Gelatt v. Ridge, 117 Mo. App. 553; Gwinnup v. Sibert, 106 Mo. App. 709; Goodson v. Embleton, 106 Mo. App. 77; Nichols v. Whitacre, 112 Mo. App. 692.

*C. E. Peers* and *George Robertson* for respondent.

(1)   Plaintiff never at any time brought the defendant into contact with any purchaser.   He made a contract assuming to act for the defendant with the alleged purchaser Snyder.   The contract so made is void under the Statute of Frauds.   R. S. 1899, sec. 3418;

Johnson v. Fecht, 185 Mo. 335. (2) While it is true that a real estate broker is entitled to a commission although his authority to find a purchaser be not in writing, before he is entitled to such commission he must bring the seller and buyer together and they must agree upon terms. Gerhardt v. Peck, 42 Mo. App. 644; Huggins v. Herne, 74 Mo. App. 86; Gelatt v. Ridge, 177 Mo. 553; Mattingly v. Pennie, 105 Cal. 514, 45 St. 87. (3) A real estate broker has no authority to change any of the terms proposed by the seller even in the smallest detail and even though it be to the advantage of the seller. Gelatt v. Ridge, supra; 19 Cyc., 197; Sleeper v. Murphy, 120 Iowa 132. (4) This action was brought November 11, 1903. Under terms of the contract it had until March 1, 1904, to be consummated. Plaintiff's commission would not be due until the contract was consummated. His action is therefore prematurely brought. Russell v. Englehardt, 24 Mo. App. 36; Heard v. Ritchey, 112 Mo. 516. (5) This farm which the plaintiff attempted to sell was the homestead of the defendant and his wife. Freeman on Coten. and Par. (2 Ed.), sec. 47 et seq.; R. S. 1899, sec. 3616; Hoselton v. Hoselton, 166 Mo. 182. (6) If any of the grounds assigned in the motion for new trial are good, then the action of the court in granting the new trial will be sustained. Even if any reason exists outside of the motion the court may still grant the new trial. State ex rel. v. Adams, 12 Mo. App. 436; Lovell v. Davis, 52 Mo. App. 342; Baugham v. Waterworks Co., 58 Mo. App. 576. (7) The granting of a new trial is discretionary with the trial court. Noble v. Kansas City, 95 Mo. App. 167; Secrist v. Eubank, 104 Mo. App. 113; Queensware Co. v. Smith, Saxton & Co., 107 Mo. App. 13; Delaplain v. Kansas City, 109 Mo. App. 107. (8) The respondent contends that under all of the evidence the plaintiff was not entitled to recover and the court should have instructed a verdict for the defendant.

JOHNSON, J.—Plaintiff, a real estate agent, sues to recover commissions which he claims to have earned under a verbal contract of employment. The jury returned a verdict in his favor in the sum of $1,100, but the trial court sustained the motions for a new trial and in arrest of judgment filed by defendant and plaintiff appealed.

At the time the contract was made, defendant, the head of a family, owned and occupied a farm of two hundred and thirty-seven acres in Warren county. Plaintiff testified that on November 6, 1903, accompanied by a Mr. Foristell, he went to defendant's home for the purpose of obtaining employment as agent to sell the farm. Defendant was willing to sell and valued the place at $5,900. Plaintiff inquired, "Will you give me a commission for selling your place?" Defendant answered, "No, you will have to make your commission out of the buyer, but, if you get a buyer for me for $5,900, you can have all over that amount, $5,900, that you may get for your commission." Terms of sale were then discussed. We quote from plaintiff's testimony: "I said, 'On what terms will you sell it?' He said, 'I am not particular, but I will leave $3,000 or $3,500 on the place.' I said, 'How much do you want paid down to bind the bargain?' He said, 'I am not particular, $250, $300, or $400, so it is safe.' I said, 'If I furnish you with a buyer, will you furnish a good deed and furnish an abstract and deliver it?' And he said he would. . . . "In regard to possession being delivered to the purchaser, Mr. Ruhwedel said that he would have to have time to have his sale and get away and that he would like to stay until the first of March, 1904. . . . I was to have thirty days within which to find a purchaser . . . the deferred payments were to bear five per cent compound interest to be secured by a deed of trust on the land for the deferred payments to run two years. These matters were all discussed between Mr. Ruhwedel and myself, the details

gone ·over again and again; $3,000 or $3,500 was to be secured by deed of trust and the purchaser was to pay $250, $300, or $400 to bind the bargain of sale and the balance was to be paid on or before the first day of March without interest."

Defendant's version of the agreement made is stated by him in this language: "I agreed with Mr. Young to take $5,900. Mr. Young asked me if I would pay him a commission if he sold my farm and I told him I would not give him any commission, that I wanted $5,900 clear and, if he could make any commission out of the buyer, he could do it that way, that it was satisfactory to me for him to sell for any price he saw fit so I got $5,900 and he would have the balance for his commission. I agreed to carry $3,000 or $3,500, on the place for two years at five per cent interest. I agreed that the person purchasing the farm might pay $500 on any interest pay day. I agreed to give possession on the first of March. Mr. Young was to sell the place within thirty days or have no right to sell it at all. He asked me if I had an abstract of title and I told him I had and I told him I had a good title to the place. Nothing was said about a payment being made, I thought I was to be paid for the place when I delivered the deed. Nothing was said about making the deed at that time, but I expected to be paid for the land when I gave the possession." After the agreement was made plaintiff returned to Warrenton, his home, and at once communicated by telephone with a firm of real estate dealers in Mexico, Missouri, the fact that he was authorized to sell defendant's farm. The next day the Mexico agents brought with them to Warrenton a Mr. Snyder of Waukee, Iowa, who was looking for a farm. Plaintiff went with the party and assisted by defendant and his family showed Snyder the land and improvements. No sale was made at the farm, but after the return of plaintiff and Snyder to Warrenton a sale was agreed on at the price of $7,000 and a written contract was drawn and signed by Snyder

and by plaintiff as the agent of defendant. This contract provided that the sale was made "upon the following terms: fifteen hundred dollars in hand paid, the receipt of which is hereby acknowledged; two thousand dollars to be paid on or before March 1, 1904; the balance of the purchase price, thirty-five hundred dollars, to be secured by a deed of trust on the real estate hereby conveyed, payable on or before two years from date thereof with interest at the rate of five per cent. from March 1, 1904, interest payable annually. The party of the second part (Snyder) reserves the right to pay the amount of five hundred dollars or more any interest pay day. The party of the first part (defendant) agrees to make a good and sufficient warranty deed with abstract of title within thirty days from this date. The party of the second part is to have thirty days to examine the abstract of title and in case of error in abstract the party of the first part is to have thirty days to correct said abstract and, if the first party fails to show good merchantable title, then this sale shall be null and void and the party of the first part is to refund the money paid on this contract. The party of the first part hereby agrees to deposit the deed in escrow properly signed in the Citizens Bank of Warrenton within thirty. days from this date. The party of the first part agrees to give peaceable possession on or before March 1, 1904, at the completion of this contract."

At the execution of this contract Snyder gave plaintiff his check for $1,500 drawn on a bank in Waukee, Iowa, to make the first payment. It was shown that he had funds on deposit in that bank sufficient to cover the amount of the check. Plaintiff accepted it and gave Snyder a receipt for it as so much cash. Plaintiff notified defendant through Foristell of the sale and, being informed that defendant would not execute a deed, drove to the farm, read the contract of sale to defendant and urged him to complete the transaction. This is plaintiff's account of what transpired: "The only reply that

he made was, he says, 'I cannot help it, I have to back out.' Mr. Ruhwedel said, 'The trade is all right, the terms are all right and I am satisfied and ready to sign it at any time and I wish I could make a deed to Mr. Snyder and settle it but my wife will not sign it.' That is the only reason he gave me for not signing the deed — that his wife would not sign it. He repeated that to me half a dozen times in the presence of Mr. Foristell. On that occasion I offered him $400 in money, laid $400 on the table in the presence of his wife and daughter and Mr. Foristell and told him that I had collected $1,500.00 and, 'Here is $400 or here is a check for the balance that is due you; you can take your choice; I cannot afford to lose this trade.' He said that he was very sorry, that he knew it would hurt my business but his wife would not sign the deed and he could not sign it. I told him in his wife's presence if he didn't pay me I would bring suit against him . . . his wife spoke up and said, 'Mr. Ruhwedel, maybe I had better sign it if it makes trouble: if it makes trouble I had better sign it.' And he says, 'No, you will not sign it, I have had lawsuits before.' . . . I told Mr. Ruhwedel that if he objected to the terms of payment on the contract, if he didn't think Mr. Snyder was good, or if he didn't want to leave a loan on the place as he had agreed to, that I would pay him all the money in cash, advancing it to Mr. Snyder. He said he would rather have a mortgage than the money and he again repeated that the terms and the price suited him and that I had done all that I agreed to do and it was too bad that he couldn't make the deed. At that time I was possessed of sufficient money to have paid the purchase price to Mr. Ruhwedel if he had demanded it."

Defendant admitted: "Everything that Mr. Young explained to me was all right so far as I understood it and the way he read it to me. I told him on that occasion that he had gone ahead and done all he had agreed to do and that I was sorry I couldn't carry out

the contract, but on account of my wife refusing to sign the deed I couldn't do it. I don't know whether I told him that I knew my backing out would hurt his business or not. I took my place off of the market and it has not been for sale since. . . . The only reason I gave Mr. Young for not signing the deed and the only objection that I made for not carrying out the terms of the sale was that my wife would not sign the deed."

In sustaining the motions for a new trial and in arrest the court assigned the following reasons:

First: Because the court erred in refusing to sustain defendant's demurrer offered at the close of plaintiff's evidence in chief for the reasons: (1) Because there is no evidence that defendant appointed plaintiff his agent or that any contract of agency was understandingly entered into between the parties; they were dealing with each other at arm's length. (2) Because the verbal agreement between them was in the nature of a roving option to buy rather than of agency, and there was no consideration to support the agreement. (3) Because plaintiff did not bind himself to do anything, hence the alleged contract was not mutually binding. (4) Because the alleged agreement is within the Statute of Frauds.

Second: Because the court erred in giving plaintiff's instructions numbered 2 and 3 for the reasons above given.

Third: Because the court erred in giving plaintiff's instruction numbered 8, for the reason that the court peremptorily instructed the jury, in case they found for plaintiff, to assess his damages at $1,100, said sum being grossly excessive under the evidence so far as actual damages go.

Fourth: Because the greater weight of the evidence is that plaintiff's purchaser was financially unable to perform the conditions of the alleged contract of sale on his part, hence the verdict of the jury is against the

greater weight of the evidence and is for that reason set aside.

Fifth: Because the suit was prematurely brought, and defendant's motion in arrest of judgment is seen and heard by the court and sustained.

First, we will consider the questions involved in the conclusion of the learned trial judge that the demurrer to the evidence of plaintiff should have been sustained. As the employment of plaintiff by defendant to act as the agent of the latter in the sale of the farm was not evidenced by a written contract signed by defendant, the written contract made by plaintiff with the purchaser Snyder falls within the Statute of Frauds—so far as defendant is concerned — and therefore could not have been enforced by Snyder against defendant. Since the enactment of the provision in section 3418, Revised Statutes 1899, that "no contract for the sale of lands made by an agent shall be binding upon the principal unless such agent is authorized in writing to make such contract," it has been held repeatedly that in the absence of written authority to sell, signed by the principal, the fact of the existence of the relation of principal and agent does not of itself confer authority on the latter to bind his correlate with respect to the subject-matter of the employment. [Johnson v. Fecht, 185 Mo. 335; Hawkins v. McGroarty, 110 Mo. 546; Roth v. Goerger, 118 Mo. 556; Fox v. Courtney, 111 Mo. 147; Greening v. Steele, 122 Mo. 287.]

But we are not dealing here with an action founded on the written contract of sale made by the agent with the purchaser. The cause asserted springs from the agreement of defendant to employ plaintiff as his agent to sell land and the procurement by the agent from the purchaser of a written contract was but an incident of the employment — an act in the performance thereof and the importance of that contract in its bearing on the rights of the parties does not arise from the fact that it could not be enforced by the purchaser against the prin-

cipal, but, as we shall show, depends on the construction of its terms and the result of a comparison of them with the terms of sale authorized by the principal in the agency agreement. In other words, our consideration of that contract will be confined to the inquiry, did the agent in procuring and offering it to his principal in legal effect produce a purchaser willing and able to buy the land on the terms authorized by defendant in his instructions to plaintiff? If this question should be answered in the affirmative and should it appear that the verbal agreement made by plaintiff and defendant evidenced their mutual intention to establish the relation between them of principal and agent, then the refusal of defendant to consummate the sale constituted a breach of the contract of employment and created a cause of action in favor of plaintiff; for a contract providing for the employment of an agent to sell land, to be valid and binding on the owner, is not required to be in writing, but may rest entirely in parol. It is not to be regarded as a "contract for the sale of lands" but as an agreement enlisting *the services* of another to aid the owner in effecting a sale. Section 3418 of the statute has no application to such contracts. The St. Louis Court of Appeals in the case of Gerhart v. Peck, 42 Mo. App. 644, observed, "This section of the statute can, by no sort of construction, be made to apply to contracts of employment between real estate brokers and their principals. The statute only prohibits such agents from binding their principals in contracts of sale to third persons when they are not so expressly authorized in writing by their principals," and this we regard as a correct enunciation of the rule. [Gwinnup v. Sibert, 106 Mo. App. 709.]

We do not agree with the view that the verbal agreement between the parties was not a contract of employment, but "was in the nature of a roving option to buy rather than of agency," nor can it be true under any interpretation of the evidence that "the parties were deal-

ing at arm's-length with each other and did not under-
standingly enter into a contract of agency." There is no
dispute between the parties regarding the facts relating
to this phase of the case.   Plaintiff was to have thirty
days in which to find a buyer on the terms stated and
was to receive as his commission all that he could obtain
for the land above the sum of $5,900.  There was neither
suggestion nor thought that plaintiff himself was to buy
the land.  His services were engaged for a specific pur-
pose and the amount of his compensation was made to
depend on the success of his efforts to find a buyer who
would be willing to pay more than the amount demanded
by defendant as his share of the proceeds of a sale.   The
terms of the agreement were definite and free from ambi-
guity and must be construed as constituting a contract
for the employment of an agent.   The parties were not
dealing at arm's-length.   It is true plaintiff sought the
employment, but equally is it true that defendant en-
gaged his services and thereupon the parties ceased to
deal as strangers and entered into a relation of trust
and confidence.

The contract was supported by a sufficient consider-
ation — the agreement of plaintiff to perform the ser-
vices required by its terms.   Our conclusion on this
branch of the case, is that the existence of the agency
must be assumed under the admitted facts and it re-
mains to be ascertained whether or not plaintiff pro-
duced a purchaser willing and able to buy the land
on the terms authorized by defendant and   thereby
earned a commission under the contract of employment.

Before disposing of the questions presented by this
feature of the case, we will determine another point made
in the argument of defendant.   It is urged that as the
farm was the homestead of defendant and his wife, and
therefore their joint estate, the contract of employment
must be held void because the wife was not a party to it.
Recently, in the case of Curry v. Whitmore, 110 Mo.

119 App.—16

App. 204, where the sale made by the agent employed by the husband alone was defeated by the refusal of the wife to sign the deed, we answered the argument that the husband could not sell the homestead without his wife's consent by saying, "Neither can a husband sell any other lands and make perfect title without his wife's consent. But neither of these conditions will relieve him of liability on his contract for the sale of such lands. That is a matter he should think of and provide against at the time he enters into his obligation." If plaintiff, produced a purchaser possessing the requisite qualifications, defendant offered no legal excuse for his failure to consummate the sale in the fact of his wife's refusal to sign the deed. [McCray & Son v. Pfost, 118 Mo. App. 672.]

It is contended that in bringing to defendant the written contract of sale plaintiff did not produce a purchaser, since he had no valid authority on behalf of his principal and the only thing he was authorized to do was to find a buyer who would buy the place on the terms stated and introduce him to defendant. Notwithstanding plaintiff had no legal authority to bind his principal in a contract of sale, the contract he made with Snyder was not absolutely void, as erroneously assumed by defendant. It was valid and binding on the purchaser at the election of defendant. It cannot be denied that, had defendant chosen to ratify it, the purchaser could have been held in damages for his failure or refusal to carry out its terms. The production of the contract was legally equivalent to the production of the purchaser himself. [McCray & Son v. Pfost, supra; Huggins v. Hearne, 74 Mo. App. 86; Rice v. Ruhlman, 68 Mo. App. 503; Hayden v. Grillo, 35 Mo. App. 647; Gelatt v. Ridge, 117 Mo. 553; Chipley v. Leathe, 60 Mo. App. 15.]

Defendant admitted that the contract embodied the terms of sale authorized by him. The willingness of the purchaser to perform its conditions is conceded, but the

burden is on plaintiff to show that the purchaser, not only was willing to buy on the terms imposed, but was able to perform the conditions of his contract. We are asked by defendant to declare as a matter of law that plaintiff failed completely to meet this burden. It appears that when he sustained the motions for a new trial and in arrest the learned trial judge entertained the view that the facts put in evidence by plaintiff tend to show Snyder was able to comply with the conditions of the contract, but that the greater weight of the evidence is against plaintiff on that issue. This is our own opinion of the evidence and it necessitates the holding that the issue is one of fact for the triers of fact and not of law for the court.

The suit was not prematurely brought. Plaintiff had the right under his contract of employment to provide, as he did, for the payment of his commission out of the first payment made by the purchaser. He had the money or its equivalent in hand and defendant's wrongful refusal to carry out the contract compelled him to restore to the purchaser the commission he had earned. His cause of action became complete on defendant's repudiation of the sale and the bringing of this suit followed that act. [Nichols v. Whitacre, 112 Mo. App. 692; Gwinnup v. Sibert, supra.]

It follows from what we have said that no error was committed in the refusal to give a demurrer to the evidence.

Plaintiff's instruction number eight was properly given. The measure of his damages is the amount of the commission he earned and lost through defendant's wrong. The parties in the contract of employment adopted the rule to be applied in fixing the compensation of plaintiff for his services to be performed thereunder and this rule should control.

The fourth ground assigned by the court in its order granting a new trial must be sustained. The facts in evidence relative to the ability of the purchaser to per-

form his contract justify the conclusion reached by the learned trial judge that the verdict was against the weight of the evidence. Not only was it within his judicial discretion to grant a new trial on that ground, but he would have failed in the proper discharge of his duty had he refused to sustain the motion believing, as he did, that an injustice had been done. [Lawson v. Mills, 130 Mo. 170; Bank v. Armstrong, 92 Mo. 265.]

Counsel for plaintiff argue that the court abused its discretion because of the undisputed fact that plaintiff, a man of means, offered to pay the whole of the purchase money if defendant was not satisfied on the point of Snyder's ability to meet the deferred payments when they fell due. Defendant did not wish to have the whole of the purchase money paid, but preferred as an investment to carry a loan of $3,000 or $3,500, secured by deed of trust on the land. Being the owner of the property, he had the right to fix the terms of sale and this he did in the contract of employment. Plaintiff's offer, therefore, was in effect a proposal to vary the terms of sale authorized by defendant in a substantial particular. He did not offer to advance the payment of $2,000, Snyder was required to make by March first and look to Snyder for reimbursement, which, if accepted, would have enabled Snyder to meet all of his obligations in the manner provided. For the reason stated, if for no other, the offer must be rejected as valueless, since it did not in any way add to the ability of Snyder to perform the contract of sale in all its terms.

We do not find it necessary to comment further on the instructions given and refused as the views expressed will furnish a sufficient guide in a retrial of the cause.

The judgment is affirmed. All concur.