# W. B. PRUGH, Appellant, v. FRANK L. TYRRELL, Respondent.

### Springfield Court of Appeals, December 5, 1921.

1. BROKERS: Real Estate Agent not Ordinarily Required to See that Contract is Entered into. Ordinarily, an agent selling real estate for principal, is not required to see that all of the interested parties, or any of them, enter into a binding contract, and he performs his contract and earns his commission when he produces to the owner a party ready, able, and willing to purchase at the price fixed by the owner or accepted by the owner.

2. ————: Where Broker Executed Contract, He was Bound to Show Readiness, Willingness, and Ability of Other Party to Contract. Where a seller of real estate was not present when the sale was made, but was represented by a real estate agent in the execution of the contract, the agent, who permitted the contract to be executed by only one of those interested in the purchase, had the burden of showing that he was ready, able, and willing to purchase on the terms specified by the seller, and the financial standing of other persons interested in the purchase was immaterial.

3. ————: Immaterial How Purchaser Becomes Able to Purchase. Where defendant offered to sell land for one third down, and the balance secured by a trust deed, if a purchaser procured by a broker was able to pay one-third cash, it was immaterial whether he had the money himself, borrowed it from some one else, or had an understanding that some other person was to furnish part of the money and have an interest in the land purchased.

4. ————: Representation by Broker as to Purchaser's Financial Ability Immaterial. Where defendant contracted to sell land to a purchaser procured by a broker, and because of a defect in his title entered into a supplemental agreement postponing the time for completing the transaction without the broker's knowledge or consent, the broker's right to commission depended on the purchaser's ability

Prugh v. Tyrrell.

to meet the seller's terms, and it was immaterial whether the broker represented to defendant that the purchaser and those interested with him had considerable capital behind them, and whether defendant relied thereon.

5. ———: Commission not Defeated by Failure to Sell Though Defect in Title. When a landowner employes an agent to sell his land, and nothing is said about the title, the owner undertakes, in case of a sale by the agent, to furnish a good title; and if the agent finds a purchaser, but the sale fails because the title is not good, the agent has earned his commission.

6. ———: Owner's Refusal or Inability to Perform, Does not Defeat Commissions. When the employment of a real estate agent by an owner of land is general in its terms, and he finds a purchaser ready, able, and willing to purchase on terms provided by or, acceptable to, the owner, the landowner's refusal, or inability, to perform will not deprive the agent of his right to commissions.

7. ———: Entitled to Commission when Purchaser Able to Perform at Time for Closing, Though not Subsequently. If a purchaser procured by a broker was able, ready, and willing to take the land at the time fixed by the contract for closing the deal, but the time for closing was postponed because of a defect in the title, and the purchaser was later unable to perform, the broker was entitled to commission.

Appeal from Circuit Court of Dent County.—*Hon. L. B. Woodside*, Judge.

REVERSED AND REMANDED.

*McGee & Bennett* for appellant.

(1) When a purchaser of real estate is accepted by the owner of the property, the agent is entitled to his commission irrespective of the purchaser's financial ability to purchase. Wright v. Brown, 68 Mo. App. 577; Glade v. Eastern Illinois Mining Co., 107 S. W. 1002. (2) "Where a broker employed to procure a purchaser procures one who enters into a written contract with the owner to purchase, the owner becomes at once liable to the broker, in absence of any special provision to the contrary. The seller does not have to accept any kind

of a purchaser, but he may do so. If he accepts him he at once becomes liable to the agent who produced him, although the purchaser may not afterwards meet the expectations of the seller. The seller does not have to accept an unworthy or unreliable purchaser, but if he does the deal between him and his real estate agent becomes a sealed lock. The commission has been earned and must be paid. Although the contract provided that failure by purchaser to make the payments as they became due would make the contract null and void.'' Knisely v. Leathe, 256 Mo. 341, 166 S. W. 257; Lombard v. Sills, 170 Mo. App. 157 S. W. 93; Wright & Orrison v. Brown, 68 Mo. App. 577; Glade v. Eastern Illinois Mining Co., 129 M. A. 443, 107 S. W. 1002. (3) Where a broker's action for commission for procuring a purchaser for property was based upon an admitted contract and the evidence failed to establish any of the pleaded defenses thereto, it is proper for the appellate court to direct judgment for plaintiff according to the terms of the contract, especially where such a directed verdict was asked. Knisely v. Leathe, 178 S. W. 453; College v. Dockery, 241 Mo. 522; Hodges v. Ramsey, 216 S. W. 568.

*Wm. P. E. Elmer* and *J. M. Stephens* for respondents.

(1) The broker implied warrants to his principal that the proposed purchaser was, at least, able to comply with the terms of the cash payment when same became due on the contract, if the principal will accept the purchaser. Lombard v. Sills, 157 S. W. 94. (2) A misrepresentation by a broker to his principal of any material fact relating to the transaction, to induce or by which he is induced to enter into a contract of sale and accept the purchaser produced by the broker, avoids the broker's right to a commission. This is true whether the broker intended to deceive the principal or not. The principal did not have to investigate the truthfulness of the representations, but had the right to rely on them as made, by the agent. The principle of estoppel applies to the agent. He had no right to make a repre-

sentation he did not know to be true. The question of the representation was one for the jury. Duncan v. Turner, 154 S. W. 820, 171 Mo. App. 661; Daugherty v. Stocks, 172 S. W. 616, 185 Mo. App. 541. (3) Where a broker fraudulently misrepresents the financial ability of the purchaser he forfeits his commission, if the purchaser is not able to carry out the contract. Meyer v. Keating Land Co., 148 N. W. 452, 126 Minn. 409. (4) A broker who repeats to his principal untrue statements of a purchaser to induce the vendor to sell or enter into a contract of sale, is not entitled to a commission on the sale, even though he acted in good faith in making the statements. This applies to representations of ability to carry out the contract. Bute v. Williams, 162 S. W. 989. (5) Agent must disclose all knowledge he has of purchaser. Dickerson v. Tyson, 103 N. E. 703, 209 N. Y. 395. (6) A misrepresentation by the purchaser to the vendor of any material fact which induced the execution of the contract, warrants the vendor in rescinding the sale, and in such event the broker is not entitled to a commission, as contract was procured by a fraud of purchaser, even tho broker acted in good faith. McCarty v. Reid, 129 N. E. 676, decided Jan. 25, 1921, 12 A. L. R. 1000. (7) The supplemental contract is invalid because no lands are described in it. Sec. 2167, R. S. 1919; 29 A. & E. Enc. Law (2 Ed.), page 592; Schroeder v. Taafe, 11 Mo. App. 267; Mason v. Small, 109 S. W. 822. (8) If these contracts are invalid, the broker would have to show by other evidence he produced a purchaser, able, willing and ready to buy the land. The entering into the contract by the principal with a purchaser merely makes unnecessary the proof of ability, etc., to buy. Kniseley v. Leathe, 178 S. W. 453.

COX, P. J.—Action for commission as real estate agent for services in selling a farm for defendant in which $625 is demanded. A verdict for $25 was rendered for plaintiff and he has appealed.

The defendant, who lived in Oklahoma, owned some land in Shannon County, Missouri, and by letter author-

ized plaintiff to sell what was called the home place. The material part of this letter is as follows: "I do not want to bind myself or the land there in any contract to sell but if you can sell the home place, 800 acres, for $12,500 I will give you five per cent. commission. With the home place, I would want one-third down, balance reasonable time eight per cent." Acting under authority granted by this letter plaintiff sold the land to one Eugene W. Townsend and a contract in writing was executed December 4, 1919, in which the price was fixed at $12,500, one-third of which was to be paid when abstract showing merchantable title was furnished and balance on reasonable terms at reasonable rate of interest, the deferred payments to be secured by first deed of trust on the land sold. The seller was to execute warranty deed and by another clause in the contract, required to furnish abstract showing merchantable title. Possession was to be delivered to purchaser not later than March 1, 1920. Five Hundred Dollars was placed in a bank as earnest money.

While the contract of purchase was executed by Mr. Townsend alone he was in fact acting for himself, his brother-in-law, Mr. Smith, and his father-in-law, Mr. Richards. Townsend, Smith and Richards all lived in Nebraska at the time. Afterward, in February, 1920, Townsend and Smith came to Missouri and met Mr. Tyrrell, the defendant. At this time the abstract of title had been furnished and upon an examination of it by Townsend's attorney, the title was pronounced defective and it was found that a suit in court would be necessary to perfect it. By reason of that fact, the deed and deed of trust called for by the contract were not executed and delivered nor the first payment made, but a supplemental contract was drawn up and signed by Townsend and the defendant in which it was agreed that the title should be perfected by suit and when perfected $3000 in addition to the $500 earnest money should be paid and the deed to the land and deed of trust to secure the balance of the purchase money executed. The balance of $9000 was to be paid in four installments in two, three, four, and five

years with 7 per cent interest. Possession of the farm was delivered and suit brought to perfect the title, which resulted in a decree that was satisfactory to the parties. At the time the title was perfected, the parties that were interested with Townsend as purchasers declined to assist him and he was not then able, without their assistance, to make the required payment and hold the land. He gave up the land and forfeited the $500 paid as earnest money. Defendant was willing to pay plaintiff's five per cent. commission on the $500 amounting to $25. Plaintiff contended that he was entitled to commission on $12,500 amounting to $625 and sued for that amount.

Mr. Townsend testified at the trial that Smith and Richards were interested with him and that he was representing them as well as himself in making the purchase in the first instance. After he had so testified, plaintiff offered to show the financial standing of these two men. This testimony was excluded for the reason that they had not signed the contract of purchase and were therefore, not legally bound. Ordinarily the agent who sells real estate for his principal is not required to see that all the interested parties or any of them enter into a binding contract. He has performed his contract and earned his commission when he produces to the owner a party who is ready, able, and willing to purchase at the price fixed by the owner or at a price which the owner accepts. In this case, however, the owner was not present at the sale but was represented by plaintiff as his agent in the execution of the contract and since the agent permitted the contract to be executed by Townsend alone, then in a suit for commission the burden was on him to show that Townsend was ready, able, and willing to purchase on the terms provided in the owner's instructions to him. Under these circumstances, we hold that the financial standing of Smith and Richards was immaterial and the evidence relating thereto was properly excluded.

Townsend also testified that when he came back in February after the execution of the first contract and at the time it was discovered that the title was so defec-

tive that a suit would be necessary to perfect it, he was then able to make the first payment as required by the defendant and had the title been satisfactory, the payment would have been made and deed of trust executed and the deal closed. His ability to pay at that time depended in part upon assistance to be furnished him by Smith and Richards and it is now contended by respondent that since Townsend did not have the money of his own to make the payment, he was not able to make the purchase in a sense that would entitle plaintiff to his commission. With that contention we do not agree. The contract executed by Townsend and by plaintiff as agent for defendant (which contract defendant testified he ratified so all question of plaintiff's authority to make it was eliminated) provided that one-third of the purchase price should be paid at the time the title papers were executed and payment of the balance of the purchase price was to be secured by a trust deed on the land sold. These were the terms specified in the letter of defendant to plaintiff in which he authorized plaintiff to make the sale. By that letter and by his correspondence relative to the contract executed for him by plaintiff, he had fixed the standard by which the ability of the purchaser to meet his terms was to be judged. He had thereby said to plaintiff, you find a purchaser willing to pay the price and if he is able to and will pay one-third cash, I will take the farm as security for the balance and close the deal. If the purchaser were able to pay one-third cash, it would in law be wholly immaterial to defendant how he became able. If he paid the money to defendant, it could make no difference whether it was money he had of his own or money he borrowed from some one else or whether, as seems to have been the case here, he had an understanding with some other person that he was to furnish part of the money and have an interest in the land purchased. The defendant had no legal interest in how Townsend was to get the money to make the first payment. If Townsend had met or tendered the payment and executed a deed of trust to

secure the balance, the terms of sale fixed by defendant would have been fully complied with and he could not have refused to accept it on the ground that Townsend had secured help from some one else in providing the money for the first payment.

In correspondence between plaintiff and defendant prior to the sale, plaintiff had stated to defendant that the parties negotiating the purchase could pay $4000 cash and were all young energetic men with considerable capital behind them. Defendant testified that he relied on the statements of plaintiff and made no investigation as to the financial ability of the purchaser. This testimony was supposed to be important because of the fact that when it was found a suit would have to be brought to perfect the title to the land, defendant, without the knowledge or consent of plaintiff, entered into the supplemental agreement of February 28, 1920, by which the time for the completion of the transaction was postponed until the decree to perfect the title could be secured. We do not think that question was properly in this case. As far as the ability of the purchaser to meet the terms of the seller was concerned we do not think it was a question as to whether or not plaintiff had misled defendant but was a question whether or not Townsend, the purchaser, was in fact able to meet those terms. In this view of the case, it results that the instructions which submitted to the jury the question of defendant's reliance on the statements of plaintiff as to the financial ability of the purchaser should not have been given.

It appears from the testimony of Mr. Townsend that if the abstract had shown a merchantable title he could and would have met the first payment and closed the deal in February but when the title was found to be defective and time was required to perfect it, then by the time the title was perfected the other parties, who were at first interested with him and who would have furnished part of the money to make the first payment if the deal could have been closed in February, had backed out and he being left upon his own resources was then

unable to make the payments and the deal fell through for that reason. On this state of facts, it is clear that if the abstract had shown a merchantable title, the payment would have been made and the deal closed in February. If that had been done, plaintiff's commission on the full amount of the purchase price would have been due at that time. That presents the question whether the real estate agent who furnishes a purchaser who is ready, able and willing to buy on terms satisfactory to the seller is deprived of his commission because the title to the land is not such a title as the seller was bound to furnish.

The rule is that when a landowner employs an agent to sell his land and nothing is said about the title but the employment is general in its nature, then as between them, the landowner undertakes in case of a sale by the agent to furnish a good title and if the agent finds a purchaser but the sale fails because the title is not good, the agent has earned his commission. If the owner wants protection against a situation of that kind, he must provide for it in his contract of employment with the agent. [Reiger v. Thompson & Merrill, 125 Mo. App. 541, 549, 102 S. W. 1072; Brown v. Smith, 113 Mo. App. 59, 87 S. W. 556.]

When the employment of the agent is general in its terms and he finds a purchaser ready, able and willing to purchase on terms provided by, or acceptable to, the owner, he has earned his commission and the landowner's refusal or inability to perform on his part will not deprive the agent of his right to collect. [Cases last above cited and also Sallee v. McMurray, 113 Mo. App. 253, 88 S. W. 157; Young v. Ruhwedel, 119 Mo. App. 231, 96 S. W. 228; Curry v. Whitmore, 110 Mo. App. 204, 84 S. W. 1131; Bailey v. Chapman, 41 Mo. 536; Budd et al. v. Zollers, 52 Mo. 238.]

To the same effect is Hart Realty Co. v. Ryan, 218 S. W. 412, decided by this court and afterward approved by the Supreme Court as reported in 232 S. W. 126.

Plaintiff's refused Instruction No. 2 embodied the principle above outlined and should have been given.

On this record there seems to have been no doubt that plaintiff found a purchaser who was ready and willing to take the land at the owner's price and on his terms if the title had been satisfactory. The only question of fact for the jury to determine was whether or not Townsend was able to make the first payment in February when it was discovered that the title was defective. If he was then able either from his own means or by the help of friends to have met that payment, then the deal would have been closed but for the defect in the title and plaintiff should recover. Townsend's inability to pay some time later after the title had been perfected cannot deprive plaintiff of his right to collect the commission. His right to a commission on the full amount of the purchase price depended on the ability of Townsend to have closed the deal in February, 1920, and plaintiff cannot be deprived of that right by the inability of Townsend to close the deal at some later date.

Judgment reversed and cause remanded. *Farrington, J.,* and *Bradley, J.,* concur.