JAMES SPEARS ET AL., RESPONDENTS, v. JAMES L. CARTER, APPELLANT.

Kansas City Court of Appeals. February 17, 1930.

*Fairchild & Fulton* and *Nourse & Bell* for respondents.

*Kenneth W. Tapp* for appellant.

ARNOLD, J.—This is an action to recover a real estate broker's commission. Plaintiffs, a copartnership, were engaged in business as real estate brokers, under the firm name of Kansas Realty Company, having their office and principal place of business at Fort Lauderdale, Florida. Defendant is a resident of Jackson County, Missouri.

There seems to be no dispute as to the material facts in the case which may be stated briefly as follows: On September 3, 1925, defendant wrote the following letter to plaintiffs:

"Kansas City, Mo., 9/3/25

"Kansas Realty Co.,

"Fort Lauderdale, Fla.

"Dear Sirs:

"I own the following seventeen lots in Fort Lauderdale, being in Progresso. Same are all title perfect, abstracts just brought to date, free and clear of all taxes. Will sell only altogether. Am offered much more than my price for the lots individually.

"My price for 30 days is $10,500 net to me, all cash, $2,000 binder, 30 days to close.

"(Listing lots by number and size.)

"Wire me if you sell.

"Very truly,

"(Signed) JAS. L. CARTER."

On September 11th, plaintiffs telegraphed defendant as follows:

"Have offer ten thousand five hundred net cash for seventeen Progresso lots if hundred dollar binder close in thirty days purchaser responsible not speculating on binder recommend acceptance answer.

"KANSAS REALTY CO."

To which defendant replied on the same date:

"Kansas Realty Company,

"Ft. Lauderdale, Fla.

"Accept ten thousand five hundred cash net but require five hundred binder.

"CARTER AND CARTER."

Thereafter plaintiffs sent the following message:

"Ft. Lauderdale Fla., Sept. 14, 25

"Carter and Carter,

"401 Comm Bldg K. C. Mo.

"Sales agreements signed on Progresso lots mailing same to you.

"KANSAS REALTY Co."

The sales agreements (in triplicate) mentioned in plaintiffs' telegram of September 14, 1925, were forwarded with the following letter:

"Fort Lauderdale, Florida,
"September 12th, 1925

"Carter & Carter

"Kansas City, Mo.

"Gentlemen:

"Enclosed you will find contracts in triplicate on the sale of your seventeen lots in Progresso, Fla.

"You will please sign same and return to Ft. Lauderdale Bank & Trust Co., together with abstracts and sight drafts for the six hundred dollars on the Ft. Lauderdale Bank & Trust Co.

"Our mail is so congested at this place that it might be well for you to send this mail special delivery.

"Enclosed you will find statement from the bank that the six hundred dollars is on deposit at their bank and draft for that amount will be honored by them. Said draft is binder on the seventeen Progresso lots.

"Yours very truly,
"KANSAS REALTY Co.
"Per J. H. DYER."

On the bottom of the foregoing letter appears the following pen and ink notation:

"We are enclosing blank warranty Florida form, two witnesses are required to signatures.

"J. H. D."

The sales agreement referred to is rather long, but as its proper construction is the basis of this suit, we deem it best to set it out in full, as follows:

"Agreement of sale
"Ft. Lauderdale

$600                                    Florida Sept. 12th, 1925.

"Received of E. D. Fox six hundred and no/100————
Dollars, as a deposit for an option which, if accepted by the owner, is to apply as part payment on the purchase of the following property:

(Description of lots.)

"The full purchase price of same being twelve thousand and no/100 dollars, to be paid as follows:

"Six hundred dollars cash in hand, the receipt of which is hereby acknowledged. Balance eleven thousand four hundred, due and payable on or before October 12th, 1925.

"Purchaser to assume taxes or assessments subsequent to ————. Interest at —— per cent, payable ————————.

"It is understood and agreed that the present owner shall furnish an abstract showing good, marketable title when deed of conveyance is given and purchaser has completed his payments as above specified.

"It is also understood that this property is purchased and sold subject to all the restrictions and provisions ordinarily contained in the regular form deed or contract for deed of the subdivision in which it is located.

"In the event the purchaser shall fail to comply with his part of this agreement within thirty days from date hereof, this deposit shall be forfeited as liquidated damages and used for benefits of the party of the first part as rent.

"If the present owner does not approve of the terms of this contract, or other terms agreeable to both parties, or if he cannot furnish good title to the above property, or if for any reason same cannot be delivered in a reasonable length of time, this deposit shall be returned to the purchaser.

"It is agreed between the parties to this contract that the seller is to furnish two abstracts together showing title to the above described 17 lots.

"By ————————————

"I hereby agree to purchase the above described property on the terms and conditions above mentioned.

"Signed in the presence of:

"(Signed) J. M. Pirtle, witness.

"(Signed) J. L. Seger, witness.

"(Signed) E. D. Fox, (Seal)
"Purchaser.

"————————— (Seal)
"Purchaser.

"We hereby approve the above mentioned sale and agree to pay to Kansas Realty Co., the sum of fifteen hundred & no/100 dollars, out of the first cash payment as commission for making said sale.

"Signed in the presence of:

"——————————— witness,

"——————————— witness.

"——————————— (Seal)

Owner

"——————————— (Seal)

Owner

"Strange Printing Co., Miami, Fla."

The copies of this agreement, together with blank form of deed, were received by defendant, but he did not execute them. On September 25, 1925, plaintiffs wired defendant as follows:

"Carter & Carter,

"Kansas City, Missouri.

"When may we expect abstract and contract 17 lots Progresso. Wire answer.

"KANSAS REALTY COMPANY."

To which defendant replied:

"Kansas City, Mo., Sept. 25, 1925.

"Kansas Realty Co.,

"Ft. Lauderdale, Fla.

"Seventeen Progresso lots sold letter follows. Can positively deliver four lots number forty block three thirty number three block one eighty seven number forty four block one eighty five number ten block one fifty five all for twenty eight hundred net to me five per cent binder until Tuesday wire collect.

"CARTER & CARTER."

It is agreed that only the first line in the last mentioned telegram has any reference to the lots in issue in this case. On the same date defendant wrote plaintiffs the following letter:

"Kansas City, Mo., September 25, 1925.

"Kansas Realty Co.,

"Third & Andrews, Ft. Lauderdale, Fla.

"Gentlemen:

"Wish to acknowledge receipt of your letters and papers regarding the sale of the 17 Progresso lots. Please be advised that the same are now under contract and a binder in my hands, a deal which I consummated before receiving your papers. I am sorry that I did not hear from you as the closing date appealed to me, although I have not got the abstracts yet. My contract calls for closing ten days after presentation of abstract to the buyer and if anything

should cause this to fall thru, I will immediately wire you and you can get busy with your buyer again.

"Wish to thank you for your courtesy in the matter and promise that I will give you the first opportunity to sell the property again providing the present sale does not consummate.

"Very truly yours,
"CARTER & CARTER, Relators,
"By JAS. L. CARTER."

On September 26th, plaintiffs wrote defendant:

"Carter & Carter,
"401 Commerce Bldg.,
"Kansas City, Mo.

"Over your signature of Sept 3d you owned seventeen lots Progresso net to you ten thousand five hundred dollars. Your telegram Sept. tenth accept offer ten thousand five hundred dollars cash net, require five hundred dollars binder. September twelfth mailed contract to you with instructions to draw binder Ft. Lauderdale bank. We and purchaser demand delivery.

"KANSAS REALTY Co."

It appears from the record that after waiting awhile plaintiffs tried to protect themselves and the alleged purchaser, Fox, by filing a *lis pendens* against the lots. Thereupon this suit was instituted.

The petition is more or less formal, and charges the listing by defendant of the lots in question at the price of $10,500 net to defendant; that within a few days after the real estate described in the petition was listed and placed with plaintiffs for sale, plaintiffs sold the property for the sum of $12,000 cash and sent defendant a telegram offering him the sum of $10,500 cash. The petition further alleges that, pursuant to defendant's telegram accepting said sum of $10,500 cash, net to defendant, plaintiffs prepared sales agreements which they forwarded by mail to defendant at Kansas City Mo.; and that defendant failed, neglected and refused to sign said agreements and failed, neglected and refused to sell, transfer and convey the aforesaid real estate to the purchaser whom plaintiffs had procured who had agreed and was willing, able and ready to pay the sum of $12,000, for the real estate therein described. Judgment is asked in the sum of $1500, being the difference between $10,500 and $12,000, for which plaintiffs claim to have sold the property. Attached to the petition as exhibits are defendant's letter of September 3, 1925, listing the property for sale, and defendant's telegram of September 11, 1925, accepting the offer of sale at $10,-500 and requiring a binder of $500, instead of $100 as contained in the offer.

The answer was a general denial.

Upon the pleadings thus made the cause went to trial to the court and jury, resulting in a verdict for plaintiffs in the sum of $500. Timely motions for a new trial and in arrest of judgment were overruled and defendant has appealed.

There are seven assignments of error, the first of which refers to the action of the court in refusing defendant's peremptory instructions in the nature of demurrers at the close of plaintiff's case, and again at the close of all the evidence. The remaining six charges are directed against the trial court's ruling in giving a certain instruction for plaintiff, in giving certain instructions on the court's own motion and in refusing instructions requested by defendant.

It is insisted defendant's instruction offered at the close of all the evidence should have been given, and that its refusal was error, because (1) the procuring of a purchaser to enter into an option contract is not sufficient to entitle plaintiffs to a commission; (2) because there was no meeting of minds. This charge involves the proper construction of the contract reflected in the correspondence between the parties, consisting of letters and telegrams as above set out, beginning with defendant's letter of September 3, 1925, which contains an offer to sell, as follows:

"Will sell only altogether. . . . My price for 30 days is $10,500, net to me, all cash, $2,000 binder 30 days to close."

The testimony shows plaintiffs listed the property as requested; and on September 11, 1925, notified defendant they had an offer of $10,500 net cash for the lots; $100 binder, to close in 30 days; and on the same date, defendant accepted by wire offer of $10,500 cash net, but required a $500 binder. Things remained *in statu quo* in these long distance negotiations until September 14, when defendant was informed the lots listed had been sold for $12,000, with a $600 binder in escrow with a bank at Fort Lauderdale, Fla., and that sales agreements were being mailed defendant.

Up to this point the testimony is such that the trial court well might construe the negotiations as a contract of sale. The testimony shows that the listing with plaintiffs had not been withdrawn, nor their authority to sell canceled. It is urged that the sales agreements are the only basis for plaintiffs' claim that they found a purchaser ready and willing to buy; and yet these agreements specifically provide that the $600 is a deposit for an option which, if accepted by defendant, is to apply for part payment on the purchase of the lots, and if the purchasers shall fail to comply, the deposit should be forfeited as liquidated damages. Defendant argues that the terms of acceptance of his offer to sell being different

from the terms offered, plaintiffs failed to produce a purchaser ready, able and willing to buy upon the terms offered, because, as stated in the contracts of sale which defendant refused to sign, the offer was $1500 more, and the binder $100 more than defendant's offer to sell. We think the court was not in error in holding the contract was not invalidated because of the fact that a greater price was offered and a greater deposit made than was required by defendant. The authorities cited by defendant in support of this contention are not applicable here because in those cases, lesser amounts were offered than those contained in the offer to sell. Defendant's position is that the contract offered for his signature and not signed was merely an option contract, and therefore he was justified in refusing to sign it, and that the court erred in refusing to sustain his demurrer to the evidence.

It is obvious the trial court construed the instrument presented for defendant's signature as a contract of sale and we think this construction proper. Defendant relies chiefly upon the first clause in the contract offered, as follows:

"Received of E. D. Fox, six hundred and no/100 dollars as a deposit for an option"

and, in effect, urges it is conclusive that this was an option contract and not within the intent of defendant in listing the property for sale.

It is a well established rule of law that a contract must be construed from the intent to be gathered from the language employed within its four corners. Citations supporting this universal rule would seem unnecessary. The proffered contract immediately following the contract last above quoted, says:

". . . which, if accepted by the owner, is to apply as part payment on the purchase of the following property . . ."

The contract further makes provision relative to the payment of taxes and the furnishing of an abstract; that the property is sold and purchased subject to certain restrictions; that in the event purchaser shall fail to comply with his part of the agreement within 30 days, the deposit shall be forfeited as liquidated damages, and used for the benefit of the seller; and that if the owner does not approve of the terms of the contract, or other terms agreeable to both parties, or if he cannot furnish good title to the property, or if, for any reason, same cannot be delivered in a reasonable length of time, the deposit shall be returned to the purchaser.

The last clause in the proffered contract stipulates:

"I hereby agree to purchase the above described property on the terms and conditions above mentioned"

and is signed "E. D. Fox, purchaser." It is also noted that the contract is headed "Agreement of Sale." While such heading is not conclusive that the instrument was an agreement of sale, yet

it is as much entitled to credence as the clause stating the deposit was for an option. We think the trial court did not err in holding the agreement not an optional one and the demurrer was properly overruled. [Montgomery v. Hundley, 205 Mo. 138, 103 S. W. 527; Vining v. Oil Co., 312 Mo. 30, 278 S. W. 747.]

There was no express condition that the broker herein should secure a binding contract between seller and buyer. The rule is a broker earns his commission when he produces a buyer ready, able and willing to purchase on the terms proposed. [Stinson v. Lamar, 289 S. W. 970; Smith v. Stubb, 293 S. W. 496; Prugh v. Tyrrell, 208 Mo. App. 582, 235 S. W. 143.] The word "option" could not have been controlling in defendant's refusal to sign or go through with the deal with Fox. Defendant wrote plaintiffs to the effect that the lots "are now under contract and a binder in my hands, a deal which I consummated before receiving your papers." Defendant may not at this time urge that he refused to complete the deal with Fox, through plaintiffs, because they had made an option contract. [Parker v. Stadden (Mo. App.), 241 S. W. 973.]

There is a further point that may, or may not, have a bearing on the question as to whether the contract was one of option or sale; and that involves the meaning of the word "binder" as used in Florida contracts in regard to real estate. It is in evidence that the term is used synonymously with "down payment" or "deposit" in Missouri and that the term "binder" is used in such circumstances as an "evidence of good faith" or to "bind a bargain."

It is urged instruction D-1, requested by defendant should have been given. The instruction sought to tell the jury that before a broker is entitled to a commission, he must find a purchaser ready, able and willing to buy upon the terms and conditions made by the seller, neither varying the acceptance of those terms and conditions by way of omission, addition or alteration. From what we have said it is apparent this instruction was erroneous in that, in effect, it tells the jury that the offer of a price larger than that proposed by defendant would bar recovery by plaintiffs.

The same rule applies to defendant's charge as regards his refused instruction D-2, involving the same point.

The court also refused defendant's instructions D-3 and D-3½, both of which sought to tell the jury that the listing with plaintiffs was not exclusive, and if the jury found from the evidence that defendant waited a reasonable length of time for the sales agreements mentioned in evidence, and prior to their receipt by defendant the latter had sold, or agreed to sell the lots to another buyer, plaintiffs were not entitled to recover. There was nothing in the pleadings to support such instructions, and the court was not in error in refusing them.

Defendant bases a charge of error on the action of the court in giving, on its own motion, instructions C-1, C-2 and C-3. It is urged the court failed therein to submit to the jury the defenses interposed, except that defendant had sold the lots before he received notice from plaintiffs, thus eliminating the defense that procuring an option buyer was not in compliance with the offer, making no distinction between the two defenses, and that the contract submitted by plaintiffs in numerous ways varied the terms offered by defendant; that, under instruction C-1, the matter was submitted to the jury on a *quantum meruit* basis, and there was no evidence on that point. This instruction reads as follows:

"The court instructs the jury in this case that, if they find from the evidence that the defendant listed for sale with the plaintiffs the real estate in question at the price of $10,500, net to defendant, and subsequently to said listing the plaintiffs secured a purchaser for said property, ready, able and willing to buy same at a sum in excess of $10,500 and deposited in escrow the sum of $600 as a binder and so notified defendant, if the jury so find, and that by the agreement between plaintiffs and said purchaser the defendant would receive the net sum of $10,500, then the jury will find for plaintiffs and assess their damages at what the jury may believe to be reasonable compensation for plaintiffs' services, not to exceed the sum of $500, unless the jury further find from the evidence that the defendant had previously to receiving the information from plaintiffs of the purchaser secured by plaintiffs, if the jury so find, sold his property to Mrs. Parks, as testified to by him."

This instruction submitted to the jury the cause of action on the contract pleaded, but it erroneously restricted plaintiffs' recovery to $500 instead of $1500; but this error was in defendant's favor and he cannot complain.

As a further objection, defendant urges the petition does not state facts sufficient to constitute a cause of action. We think this point is without merit. The petition alleges the listing of the property, the sale thereof by the plaintiffs under the terms offered by defendant, and that defendant refused to carry out the contract. These allegations are sufficient to constitute a cause of action against defendant.

Finally defendant urges in support of this appeal that the court erred in admitting evidence with reference to the *lis pendens* action in Florida. This evidence was introduced without objection of defendant and there was no motion to strike it out. Moreover, if this evidence was immaterial and proper objection had been made, it would have to appear to be highly prejudicial to justify this court in considering it a matter of reversible error.

We find no reversible error of record and the judgment is accordingly affirmed. *Bland, J.,* concurs; *Trimble, P. J.,* absent.