# LUTHER FINCH, Appellant, v. GUARDIAN TRUST COMPANY, Respondent.

### Kansas City Court of Appeals, June 3, 1901.*

1. **Real Estate Broker: COMMISSIONS: LANDOWNER'S FAIL-URE TO COMPLETE SALE: DEMURRER TO EVIDENCE.** Where a real estate broker suing for his commission offers to show that he produced a purchaser who was able and ready to consummate the bargain and the landowner admitted in a letter that a sale had been made, a demurrer to the evidence should be overruled and the case sent to the jury.

2. **————: ————: CONTRACT: CONSTRUCTION.** The contract between a landowner and a real estate broker provided that the broker's commission should be payable out of the first cash payment. *Held*, such provision is not a condition precedent to the broker's right to recover his commissions and does not mean that unless there is a cash payment there is no commission.

ON MOTION FOR REHEARING.

3. **Appellate Practice: BILL OF EXCEPTIONS: SIGNING: FIL-ING.** Where the record shows that a bill of exceptions was not signed until after the expiration of the time granted and further fails to show that the bill was ever filed, there is no bill of exceptions and the appellate court can only consider the record proper.

Appeal from Jackson Circuit Court.—*Hon. J. H. Slover,*
Judge.

AFFIRMED.

*F. B. Ellis* and *Witten & Hughes* for appellant.

(1)   If this was a suit for commission by appellant who had been the cause of completing a sale, then the demurrer in

---

* This case reached Reporter, February 25, 1902.

the evidence should have been sustained, but it is not such a suit. The suit was not instituted upon any such theory. All that the plaintiff was required to do was to furnish a purchaser who was able and willing to enter into the contract agreed upon. The contention of appellant is that he found a purchaser who was able and willing to purchase the property at the price and sum agreed upon between the parties, but that the defendant wrongfully repudiated the contract and rescinded plaintiff's authority. If this view of the law is correct then the court committed error in taking the case from the jury. Harwood v. Diemer, 41 Mo. App. 49; Reeves v. Vette, 62 Mo. App. 440; Diechmann v. Diechmann, 49 Mo. 107.

*Trimble & Brailey* and *W. R. Thurmond* for respondent.

(1) The cases cited by appellant are not in point, because it does not appear that it would have been useless to have the purchasers and plaintiff sign a contract of sale. It was the most important part of the transaction, the vital provision in plaintiff's contract. Besides, there is no evidence that defendant would have refused to accept the tender of such sale memoranda, and, after having authorized plaintiff to make such sale contract, it would have been binding on defendant, even after it had discharged plaintiff as its agent. Hayden v. Grillo, 35 Mo. App. 647. (2) A party can not maintain an action on a contract where he himself is the first to violate it by withholding its reasonable benefits from the other contracting party. Doyle v. Turpin, 57 Mo. App. 84. (3) Where a commission is to be paid when payment is made, if no payment is made the agent is not entitled to recover commission. McPhail v. Buell, 25 Pac. 266; Wilson v. Mason, 158 Ill. 304, s. c., 42 N. E. 134; Quiggle v. Prouty, 45 Pac. 676.

BROADDUS, J.—The gist of the plaintiff's cause of action is as follows:

"That on the twenty-first day of July, 1899, plaintiff entered into a contract with defendant whereby it employed plaintiff to sell real estate belonging to defendant and situated in, and in the vicinity of, Plattsburg, Clinton county, Missouri; that by the terms of said contract defendant agreed and obligated itself to pay to the plaintiff the sum of five per cent commission on the price and sum for which any real estate in said locality should be sold to any purchaser procured by the plaintiff, and particularly upon the price and sum for which the tract of land hereinafter mentioned should be sold by plaintiff to any purchaser, and that said commission should be payable out of the first cash payment of one-third of the purchase price, which said contract is hereto attached, etc.; that on the ———— day of November, 1899, plaintiff procured one ———— Thompson and one ———— DeBerry, doing business as partners under the firm name of Thompson & DeBerry, to purchase from defendant one certain tract of 160 acres of land lying in the vicinity of Plattsburg, Missouri," then describing the land, which tract of land was "in and near the vicinity of said town of Braley, for the price of $9,000; that through the procurement and inducement of plaintiff, said Thompson & DeBerry did, on said ninth day of November, 1899, offer to pay for said tract of land the price and sum of $9,000, and to purchase the same from defendant for said price and sum, which said sum said defendant did then and there agree to accept; that said Thompson & DeBerry were then and there ready, able and willing to consummate said purchase at said sum and continued able and willing to consummate said purchase until the ———— day of November, 1899, thereafter, when defendant wrongfully refused to consummate said sale," etc.    Plaintiff alleges his commission was five per cent for which he asks judgment.

The answer of defendant admits that it is a corporation, and admits that it entered into the contract set out in plaintiff's petition; but denies the other allegations of the petition and

denies that the plaintiff complied with the terms and conditions of said contract.    The contract in question in part is as follows:

"Retain this for further reference.

"Rules and Regulations for Resident Agents.

"Kansas City, Mo., July 21, '99.

"To Mr. Finch, Plattsburg, Mo.

"Dear Sir:    You will be allowed on sales of property owned by our companies (if sold with the assistance of either a northern agent or a traveling agent) a commission of five per cent.    If sold with the assistance of a northern agent and a traveling agent both, your commission will be on such property, one-fourth of fifteen per cent. . , . This commission shall be payable out of the first cash payment of one-third of the purchase price.

"Sale memoranda must be signed by resident agent and purchaser, and must be accompanied by a cash payment of at least ten per cent. . . . Our general terms of sale are one-third cash, one-third in one year and one-third in two years, unless otherwise stipulated in writing.    Resident agents must strictly adhere to list prices on all property in making sales. . . ."

We have given so much of said contract as is necessary for a proper understanding of the case.

Plaintiff's evidence tends to show that he had negotiations with Thompson & DeBerry who evinced a disposition to buy the land in controversy, and that finally they made him an offer of $9,000 for it.    Then Clardy, one of defendant's agents, sent plaintiff the abstract of title to the land and told him to extend it and deliver it to Thompson & DeBerry, which he says he did.    As there was a mortgage on the property, he then telephoned to Mr. Haight, the auditor of the defendant, and asked him if he had a deed of release of the mortgage and received in reply that he had not.    Haight asked him if the party was going to take the land, and he told him yes.    He

then said to Haight that he was glad that they had accepted the proposition of Thompson & DeBerry, as there was something in it for him. Haight appeared surprised and asked him if he claimed a commission; and when he told him yes, he asked him how? Plaintiff then told him he had made the contract, whereupon Haight informed him that Clardy claimed all the commission. During the conversation, Haight asked plaintiff if Thompson & DeBerry would be ready to-morrow, that Clardy was coming with a deed to the property. He answered him that he supposed they would; that he had seen Thompson and he said it might take a little while, but it would not take long; that they could be ready by the time the other parties were. And the matter of commission Haight said he would take up right away. This was the ninth of November, 1899. Thereafter plaintiff received a letter from Haight, defendant's auditor, which is as follows:

"Kansas City, Mo., Nov. 10, 1899.
"Mr. Luther Finch, Plattsburg, Missouri.

"Dear Sir: On July 24, I believe, a written arrangement was made between you and Mr. Hornbeck, manager of the land department of the Guardian Trust Company, or at least, if not made by Mr. Hornbeck, by some person in his office without the knowledge of Mr. Hornbeck. By the terms of said contract it was contemplated that if you should assist in the sales of lands belonging to the companies represented by Mr. Hornbeck, or should actually sell the same, then you would receive certain commissions in accordance with the contract. But it was not understood by us that if you rendered no assistance whatever, and we should sell the lands in Plattsburg, Braley, or adjoining properties, that you should receive any part of a commission, or any commission. You telephoned in here the other night that in case the company should not only sell lands in the townsite of Braley, but should sell farming lands adjoining the townsite, you would claim commission not only on the townsite but on the farming lands. . . . Had

you anything to do with the making of this contract or the proposed sale of the townsite of Braley, and the adjoining farm lands, it seems to me that your duty as agent would have required you to report such action, or attempted sale by you, to this office and not through Mr. Clardy. The fact that you have in this case made a claim for commissions when the sale was conducted through our office, and the fact that you have made a claim for commissions on the whole deal, leads me to advise you that from this date your contract, dated July 21, and accepted by you July 24, is hereby cancelled on behalf of the Guardian Trust Company and any and all other companies which it represents.

"Yours truly,

"E. O. HAIGHT, Auditor."

Thereafter, on November 17, 1899, Mr. Haight wrote to plaintiff another letter, somewhat apologetic in character, and wanting to know if there was any prospect of still getting up a deal with Thompson & DeBerry. However, prior to this last letter, and about a week from the time plaintiff had notified Haight of the sale he claimed to have made with Thompson & DeBerry, Clardy came to Plattsburg and told him that the trade was off—that they had refused to let it go through. Clardy then said to plaintiff, among other things, that the defendant had consulted Mr. Braley, one of the defendant's attorneys, who said: "No, you can not let that sale go through; Finch will be entitled to a commission if you do." Clardy then said: "It was on that account that the sale did not go through." Plaintiff says it was prior to the ninth of November, 1899, that Thompson & DeBerry made him the $9,000 offer for the land. He sent in the offer to the defendant through Clardy.

Mr. Thompson, of the firm of Thompson & DeBerry, testified that he offered to buy the land of the plaintiff at the price of $9,000, at which time he says that he was able, willing and ready to give that price for it. He says he had a talk over

the telephone with Mr. Clardy, whose office was in Kansas City, Missouri. "He, Clardy, wanted to know if we would not give a little over $9,000 for the land. I told him I would not. Then he wanted to know if we would not give the cost of the bills printed, which would be a hundred dollars or so, and I told him no. (These bills were for land sale that was to take place some time thereafter). He says: 'You will still give $9,000?' I says: 'Yes, with the understanding that we are to have a little transportation—passes.' And he said that he had just come from downstairs, and that the matter was under discussion at that time, and he would go up and tell them that he had accepted the $9,000 proposition. I told him: 'Very well, but let us know by wire, or write me a day or two before, so we can get the money ready and everything in shape; and he said he would do it and tell them it was sold. In a day or two thereafter he received the abstract of title to the land through the plaintiff. This abstract showed that the property was mortgaged, and the purchasers did not want land with a mortgage on it." No deed was ever tendered Thompson & DeBerry for the land.

The evidence tends to show that the proposed purchasers were able and ready to take the land. After the close of the plaintiff's side of the case, the court, at the instance of the defendant, instructed the jury to find a verdict for defendant, which was accordingly done. Plaintiff appealed and contends that the evidence in the case entitled him to go to the jury.

The contention of the respondent is that there was no sale consummated, and that as by the contract plaintiff was to be paid his commission out of the first cash payment, and there being no payment, he is not entitled to recover; and cite the following cases to·support their position: McPhail v. Buell, 25 Pac. (Cal.) 266, was a case where defendant agreed to pay to the plaintiff a commission for selling land when vendees paid defendant a certain sum and gave their notes and mortgage for the balance. The vendees executed their notes, but

never paid the money. The defendant made every effort to get vendees to pay the money but failed in their efforts and finally had to take the land back. It was held that the plaintiff was not entitled to recover. In Wilson v. Mason, 158 Ill. 304, it was held: "A real estate broker is not entitled to commission where the sale to his customer is not consummated, and the executory contract of sale is not binding under the statute of frauds."

The first of these cases is somewhat different from the one at bar, in that the defendant made every effort in his power to carry out the contract made through the agent, but the purchasers failed on their part. The plaintiff was to receive his commission for selling the land *when vendees paid him*. And as that condition of the contract was never complied with, the plaintiff was not entitled to commission. In Wilson v. Mason, supra, the law is laid down broadly that unless a sale is consummated no commission can be recovered by the agent.

But the appellate courts of our own State have seemingly passed upon this question. Hayden v. Grillo was three times before the St. Louis Court of Appeals. It was first held that "a real estate broker can not receive commissions for negotiating a sale except upon proof that he secured a purchaser who was ready and able to complete the purchase upon the terms offered by the principal." 26 Mo. App. 289. Again, when the case was before that court, the following somewhat extended rule of law was laid down by Judge Biggs as follows:

"The contract of a real estate broker, who undertakes to sell the land of another for a commission, requires him to find a purchaser ready and able to make the purchase, or to respond in damages in the event of failure to perform his undertaking—to procure from and tender to the owner a valid written contract containing the terms of the sale, which the owner may enforce by law, if necessary; or else to produce such a purchaser to the owner, ready and able to complete the contract, if the vendor will make the conveyance. The owner

may, however, to the like effect waive performance of such conditions on the part of the broker, by an absolute refusal to complete the contract, when advised by the broker that a purchaser has been found." 35 Mo. App. 647. And again in the same case the court says: "That it was not necessary for the plaintiff, who was a real estate broker and was suing for his commission for the sale of realty, to show that the sale had actually been completed either by a conveyance or enforcible contract of sale." 42 Mo. App. 1. "A real estate broker employed to sell lands by the owner, finds a purchaser for the same, and does everything which he agreed to do, and the trade fails, not on account of any default on his part or that of the purchaser, but because it is repudiated by the landowner, the broker is entitled to compensation." Harwood v. Diemer, 41 Mo. App. 49; Reeves v. Vette, 62 Mo. App. 440.

The doctrine is well settled from the foregoing cases that a real estate agent, when he has found a purchaser for his principal who is willing, able and ready to take the land at the price asked by his principal, is entitled to commission upon the failure or refusal of the principal to consummate the bargain. That clause in plaintiff's contract with the defendant offered in evidence, "This commission shall be payable out of the first cash payment of one-third of the purchase price," is not a condition precedent to plaintiff's right of recovery. And the contract by its terms does not require a cash payment of one-third of the purchase price before the agent is to get his fees; it merely provides that his commission shall be payable out of that fund. It was not intended that unless there was a cash payment of one-third of the purchase price the agent was to get no commission.

As there was evidence tending to prove that the plaintiff had induced Thompson & DeBerry to offer defendant's price of $9,000 for the land; that they were able and ready to consummate the bargain; and that defendant refused to complete the transaction after taking advice from its attorney that if

they did so the plaintiff would be entitled to his commission, and in view of the further fact that defendant's auditor, in his letter dated November 10, 1899, admitted that the sale had been made, the case should have gone to the jury.

Cause reversed and remanded.

### ON MOTION FOR REHEARING.

BROADDUS, J.—On motion for rehearing our attention has been called specifically to the fact that the record fails to show, in the first place, that the bill of exceptions was filed within the time allowed by the trial court. The record shows that on the thirty-first day of March, 1900, the plaintiff took his appeal and was given ninety days to file his bill of exceptions. The record then further shows that the bill of exceptions was not signed by the judge until the fourteenth day of July, 1900, after the expiration of ninety days given by the court for filing the same. The record fails to show that the bill of exceptions was ever filed.

Under the ruling of this court in Finlay v. Gill, 80 Mo. App. 458, and of the Supreme Court in Lafollette v. Thompson, 83 Mo. 199, we are concluded from considering the questions raised at the trial, for the reason that the record fails to contain any bill of exceptions. The purported bill of exceptions is not such as the law requires and is therefore in fact not one.

Motion for rehearing sustained; and as there appears to be no error in the record proper the cause is affirmed.