GEORGE WECHSLER, Respondent, v. JAMES C. DAVIS, Director General, Appellant.

In The Kansas City Court of Appeals, February 20, 1922.

1. **JURISDICTION: Venue: Pleading: Question of Venue May be Raised in Answer to Merits.** Where circuit court had jurisdiction of subject-matter, but had no jurisdiction over the person of defendant, unless he choose to voluntarily submit to jurisdiction, and lack of venue did not appear on face of petition, defendant had the right to raise the question of venue in his answer and include it with a defense on the merits.

2. ————: **Appearance: Voluntary Appearance of Defendant Substituted for Another and Adoption of Former Defendant's Answer Waived Objection in Answer to Venue.** Where suit was originally brought against the Director General of Railroads in a county where it could not be maintained under his General Order 18-A, and after the pleadings were made up in case before trial, defendant's predecessor

resigned as Director General, and defendant, his successor, was substituted for Director General by consent of the Agent under Transportation Act 1920, who adopted the answer on file excepting to the venue, *held*, that defendant's entry of appearance was not conditioned upon his being allowed to adopt answer of his predecessor, and by voluntarily appearing he waived objection to the jurisdiction, though if he had been brought into court by regular summons he could have filed an answer containing a plea to the jurisdiction and joined such plea with one to the merits, or have adopted the answer theretofore filed by his predecessor.

3. ——: ——: Special Appearance Must Appear on Face of Motion. In order for an appearance to be special the order, plea or motion must expressly state that the appearance is only for the purpose of excepting to the jurisdiction, or at least, the order, plea or motion on its face must appear to be a special appearance for that purpose.

4. ——: ——: Waiver: Appearance of Substituted Defendant Held General Appearance, Waiving Jurisdiction Over Person. Where the agent under the Transportation Act against whom an action was pending resigned, and his successor, by agreement of the parties, was substituted therein as defendant, *held* his appearance was a general appearance waiving question of jurisdiction over his person which had been raised by the answer on file.

5. APPEAL AND ERROR: Constitutional Question: Constitutional Question not Raised in Trial Court Cannot be Presented in Appellate Court. The point made in defendant's brief that trial court in refusing to give peremptory instruction in the nature of a demurrer to evidence, violated section 1 of the Fourteenth Amendment to the Constitution of the United States, does not raise a constitutional question when no attempt was made to present point in trial court.

6. ——: Where Ruling or Motion to Strike out Amendment was not Preserved in Bill of Exceptions the Same Could not be Considered an Appeal. Where a motion filed to strike out amendment was overruled and the exception taken, but same was not contained in Bill of Exceptions, the ruling thereon cannot be considered by appellate court as a matter of exception.

7. COMPROMISE: Release: Claim of Settlement and Release of Liability Must be Pleaded in Answer. Where after filing petition for removal plaintiff's petition having prayed judgment for fifteen Thousand Dollars ($15,000), it was stipulated between parties that plaintiff would reduce the prayer to Three Thousand Dollars ($3,000) and defendant would withdraw his petition and bond for removal, and that after same was done it was ruled that cases of this kind were not removable and thereupon plaintiff amended petition again asking for Fifteen Thousand Dollars ($15,000) dam-

ages, whereupon it was contended by defendant that the stipulation was a complete compromise and release of any liability which might have existed above Three Thousand Dollars ($3,000), *held* that the contention must be ruled against defendant because not pleaded in the answer.

8. **APPEAL AND ERROR**: Ruling on Motion for Physical Examination Cannot be Reviewed on Appeal When Same Does not Appear in Bill of Exceptions. Where ruling on application for physical examination was not preserved in Bill of Exceptions, but appeared in abstract of record proper, the same could not be considered on appeal.

9. **MEDICAL EXAMINATION**: Abuse of Discretion: The Court in Refusing Third Physical Examination of Plaintiff Did not Abuse its Discretion. Where plaintiff had been twice examined by defendant's physician and when last examined the petition alleged his left ear, left side of his face and head were lacerated, bruised and inflamed and he has and will suffer from deafness, the defendant having had full knowledge of plaintiff's claim in reference to injuries and diseases of ear at time its physician examined plaintiff, it was not an abuse of the court's discretion to refuse to allow a third examination by an expert in treatment of injuries and diseases of the ear.

10. **DAMAGES**: Excessive Verdict: A Verdict of Five Thousand Dollars ($5,000) for Injuries to Head, Back, Hip, Leg, Impairment of Kidneys and of Hearing, Held not Excessive. Where plaintiff, a passenger in a railroad wreck received cuts and bruises on his head, back, hip and leg, which resulted in frequent dizzy spells, lameness, temporary impairment of kidneys, loss of twenty-five per cent (25%) of hearing of left ear, inability to lift heavy objects, and his ills were of a permanent nature, a verdict of Five Thousand Dollars ($5,000) is *held* to be not excessive.

Appeal from the Circuit Court of Jackson County.— *Hon. Samuel A. Dew,* Judge.

AFFIRMED.

*Mont. T. Prewitt,* and *Hogsett & Boyle* for respondent.

*Warner, Dean, Langworthy, Thomson & Williams* for appellant.

BLAND, J.—This is an action for damages for personal injuries. Plaintiff recovered a verdict and judgment in the sum of $5,000 and defendant has appealed.

Plaintiff was injured on Jnauary 3, 1920, while a passeger on a passenger train operated by Walker D. Hines, Director General of Railroads. Hines was defandant's predecessor operating the Chicago Great Western Railroad. The injury was caused by the train leaving the track at Wyeth, Andrew County, Missouri. Plaintiff at the time of the accrual of his cause of action and at the time of the trial was a citizen and resident of the State of Illinois.

It is insisted that under General Order 18-A of the Director General of Railroads (which it seems to be agreed, since the decision of the Supreme Court in the case of Alabama and Vicksburg Ry. Co. v. Journey, not yet officially reported, is a valid order) the court had no jurisdiction of the cause and defendant's demurrer to the evidence should have been sustained. This order provides that suits of this kind must be brought in the county or district where plaintiff resided at the time of the accrual of his cause of action or the county or district where the cause of action arose. The order is pleaded in the answer where it is alleged that plaintiff was a resident of the State of Illinois and that his cause of action did not accrue in Jackson County, Missouri, where the suit was brought.

The circuit court of Jackson county, Missouri, had jurisdiction of the subject-matter of this suit, but under General Order 18-A had no jurisdiction over the person of defendant's predecessor Hines, unless he choose to voluntarily submit to the jurisdiction of the court. If lack of venue did not appear on the fact of the petition he had the right to raise the question of venue in his answer and include it with a defense on the merits. [Harrison v. Murphy, 106 Mo. App. 465, 470.] This defendant's predecessor did. However, after the pleadings were made up in this case and before a trial of the same de-

fendant's predecessor Hines resigned as director general of railroads and John Barton Payne was appointed in his stead upon the passage of the Transportation Act (Act of February 28, 1920, Part 1, Vol. 41, U. S. Statutes at Large, p. 456.). This act provided that the President should relinquish possession and control of all railroads under federal control and that he should appoint a federal agent against whom suits might be brought arising under such control. The President appointed John Barton Payne federal agent under this act and he was acting as such on February 25, 1921. The record recites—

"Thereafter and on February 25, 1921, and during the January Term, 1921, of said court, plaintiff again amended his petition by interlineation, and John Barton Payne, director general of railroads and agent designated by the President under Transportation Act, 1920, was substituted by agreement as successor of said Walker D. Hines, and said substituted *defendant entered his appearance in said cause* and adopted the answer theretofore filed by said Walker D. Hines, defendant, and the court made an entry of record that such proceedings were had." (Italics ours.)

This entry of appearance was made before the trial of the cause. There is nothing upon the face of this entry to indicate that the appearance of John Barton Payne was not a general one. It is in no sense special or conditional although the entry states that Payne adopted the answer theretofore filed by Hines and the answer contains a plea to the jurisdiction setting up the provisions of General Order 18-A. However, it will be noted that the entry of appearance was not conditioned upon defendant's being allowed to adopt Hines's answer and Payne could not enter his general appearance and thereafter attempt to withdraw it by adopting the answer heretofore filed by his predecessor, which contained a plea to the jurisdiction. Under the circumstances we must construe the entry to mean that defendant entered

his general appearance and thereafter adopted that part of the answer containing a plea to the merits.

We think there is no question but that John Barton Payne entered his general appearance in this case. It is conceded that he could have refused to enter his appearance and stood upon his rights and before he could have been brought into court a regular summons would have had to have been issued and served upon him in the regular way. If brought into court in this manner, he could have filed an answer containing a plea to the jurisdiction and joined such a plea with one to the merits or he could have adopted the answer theretofore filed by his predecessor Hines, but instead of doing this he voluntarily entered his appearance. There is nothing upon the record to show that his appearance was a special one. The rule is that in order for one's appearance to be special the order, plea or motion must expressly state that the appearance is only for the purpose of excepting to the jurisdiction, or, at least, the order, plea or motion on its face must appear to be a special appearance for that purpose. [2 R. C. L. 322; Nicholes v. The People, 165 Ill. 502, 503, 504; Reed v. Chilson, 142 N. Y. 152, 155.]

It is stated in 4 C. J., p. 1318, par. 5—"A defendant appearing specially to object to the jurisdiction of the court must, as a general rule, keep out of court for all other purposes. In other words, he must limit his appearance to that particular question or he will be held to have appeared generally and to have waived the objection." [See, also Thomasson v. Ins. Co., 114 Mo. App. 109, 115; Harrison v. Murphy, supra.]

The reason why the federal agent should desire to enter his general appearance to the cause is quite apparent, for under the provision of section 206 (a) of the Transportation Act if the plea to the jurisdiction filed by his predecessor was good and as a result thereof the suit would have been dismissed for want of venue in the circuit court, plaintiff could have immediately re-

filed the same suit in the same court, and, no doubt, it was apparent to the federal agent that this would have been a useless procedure and contrary to the spirit of section 202 of the Act. This section provides that the President should wind up all business growing out of federal control as soon as practicable, so no doubt the federal agent instead of requiring plaintiff to bring a new suit elected to proceed with the one already filed as being the proper course under the circumstances. The highly technical character of the contention now being made by the defendant appears when it is realized that · should we sustain defendant's contention that there was no venue in the circuit court of Jackson County, Missouri, plaintiff could immediately refile the same suit in the same court and thereafter the case could be tried in the same manner that it has already been.

After the case was tried and judgment entered and after defendant's motion for a new trial had been overruled, John Barton Payne having resigned, James C. Davis, the present defendant, was appointed federal agent in his stead and the record shows as follows:

"Now on this 4th day of May , 1921, come . . . said James C. Davis, Director General of Railroads and Agent, as aforesaid, by his attorneys and enters *his appearance herein* and all of said parties do now in open court agree *that he shall be substituted herein as defendant.*" (Italics ours.) Thereafter said Davis appealed the case here. We think there can be no question but that this was an entry of general appearance of the present defendant in this suit. [Brown v. Ins. Co., 228 S. W. 883.]

Plaintiff insists that the petition shows on its face that plaintiff resided in the State of Illinois and that the derailment happened in Andrew county, Missouri, and that if defendant is correct in his contention as to venue or the lack of it in the circuit court of Jackson County, Missouri, it appears on the face of the petition and as defendant did not demur on the ground of a lack

of venue it is waived. The petition does allege that plaintiff resided in the State of Illinois at the time of the bringing of the suit and at the time of the derailment but as to where the accident occurred it alleges only that it happened "at a point near the town of Wyeth, in the State of Missouri." The petition does not state that the occurrence was within the corporate limits of Wyeth or in fact that Wyeth is an incorporated place. Unless the court passing upon such a demurrer would take judicial notice that Wyeth is located in Andrew county, Missouri, then, of course the petition was not subject to a demurrer on the grounds suggested. There is great conflict of opinion as to whether the courts will take judicial notice of small towns not incorporated by public law. [See 15 R. C. L., pp. 1083, 1084, 1085.] Nor does the petition allege that the derailment occurred within the corporate limits of the town of Wyeth. In ruling the present point against the defendant we prefer to place our decision on the ground that the venue was waived by defendant entering his general appearance.

A point is made in defendant's brief under his assignments of error, but not elaborated, that the trial court in refusing to give his peremptory instruction in the nature of a demurrer to the evidence on the ground that the suit was brought contrary to General Order No. 18-A, violated section 1 of the Fourteenth Amendment to the Constitution of the United State in that the "verdict and judgment . . . if enforced against the defendant would deprive the defendant of his property without due process of law, and deprive the defendant of the equal protection of the laws, for the reason that said suit was instituted and conducted contrary to the laws of the United States." No other reason it given in the brief as to why this point should be sustained. We fail to find on examination of the record that any constitutional point was attempted to be raised in the trial court, nothing is said about it in defendant's instruction

in the nature of a demurrer to the evidence or in any other place in the record. We must, therefore, hold that there is no constitutional question now in the case. [Lohmeyer v. St. Louis Cordage Co., 214 Mo. 685; Roy v. Kansas City, 224 S. W. 132.]

After the filing of the petition for removal, plaintiff's petition having prayed judgment for $15,000 alleging that the action involved a controversy between citizens of different states and that plaintiff was a citizen and resident of the State of Illinois and that defendant was a citizen and resident of the State of New York with his official residence in the City of Washington, D. C., defendant's counsel told plaintiff's attorney that the United States District Judge for the Western District of Missouri had ruled that cases of this kind could be removed to the federal court, whereupon it was stipulated between the parties that plaintiff would reduce the prayer in his petition to $3,000 damages and defendant would withdraw his petition and bond for removal. After this was done the United States Circuit Court of Appeals ruled that cases of this kind were not removable and thereupon plaintiff amended his petition again asking for $15,000 damages. It is said that defendant then filed a motion asking that the amendment raising the amount asked for to $15,000 be stricken out, which the court overruled. The action of the court in regard to this is assigned as error. In this connection it is insisted that this agreement "was a complete compromise, settlement and release of any liability which might have existed above $3,000." This contention must be ruled against the defendant. In the first place the motion which the trial court overruled and the exception taken, which forms the basis of this contention, are not contained in the Bill of Exceptions and therefore cannot be considered by us as matters of exception; and in the second place the matter of compromise and settlement in order to be insisted upon must have been pleaded in the answer. (Rivers v. Blom, 163 Mo. 442, 448), and that was not done.

It is next contended that the court erred in refusing the application of the defendant for a medical examination of plaintiff. The trial was begun on the last day of February and the application was made on the first day of March. Plaintiff had theretofore twice submitted his person to an exmination by a physician selected by the defendant. We fail to find the motion for the appointment of a physician in the Bill of Exceptions but it does appear in the abstract of the record proper. Under such circumstances we cannot consider the motion. However, even could we consider the motion we think that the trial court did not abuse its discretion in overruling the motion. At the time plaintiff was last examined by defendant's physician the petition alleged that as a result of the accident plaintiff's "left ear and left side of his face and head were lacerated, bruised and inflamed, and he has suffered and will suffer with deafness and with attacks of dizziness and semi-consciousness." The motion states that the "rights of the defendant require that a physician specilized and expert in the treatment of injuries and diseases of the ear and in proper diagnosis of conditions found in the ear be permitted and authorized to make a physical examination of plaintiff." Defendant had full knowledge of plaintiff's claim in reference to injuries and diseases of the ear at the time its physician examined plaintiff. We do not think that the court abused its discretion in not allowing a third examination of plaintiff under the circumstances.

It is last insisted that the verdict is excessive. The facts in relation to plaintiff's injury show that he was a young man twenty-three years of age at the time of the wreck; that he was in the worst wrecked coach of the train, which was about three cars from the engine. He testified that the injuries he received were—

"I was cut by glass above, on the left ankle; I was also cut on the left thigh. I was struck about the left hip, and I was cut on the head, above the left ear, and a little back. . . . About an inch back."

This cut was about two inches long and about an inch back and three inches above the ear. He was rendered unconscious and came to as he was being helped out of the car, he estimated the period of his unconsciousness at five minutes. He received a blow on the back "just above the left hip." There were a number of doctors at the scene of the wreck but he did not call one because "they were busy around there." He testified that he told others about it and they said "they would see about me and tell a doctor." There were two relief trains, the first one contained ninety-eight patients. The wreck occurred in the morning and he left for St. Joseph, Missouri, about 1:30 in the afternoon on the second relief train. While he was waiting for the relief train he was "limping around there a part of the time" and during the rest of the time "sitting around the fire" on his suit case. He had supper at St. Joseph and then came to Kansas City, arriving there about 7:30 P. M.

At the time of the wreck he was on his way to Kansas City to take a course in an automobile school. When he arrived at Kansas City he went in an automobile to the automobile school and there matriculated, after being there a short time he was assigned to a boarding house where he arrived about 7:45 P. M. He told the boarding house people about the wreck and they gave him some salves to use upon his bruises and contusions. Next morning his landlady called a doctor and he was under the doctor's care for about six weeks and until he left Kansas City. The doctor called daily to see him for three or four days and then came "every other day, or probably twice a week." During the latter part of the six weeks' period plaintiff called at the doctor's office three or four times. Plaintiff went downstairs to his meals the week following his arrival in Kansas City. He attended school to the end of the regular period of six weeks and received his diploma. He was unable to do any heavy work at school and stood around and watched the demonstrations. He consulted his physician the day before he left for his home in Sterling, Ill. The doctor

then told him that "a doctor could not do very much for him, could not do anything." He had no doctor after he left Kansas City. He also testified that he was not financially able to call a doctor to see him at Sterling.

The evidence shows that plaintiff's cuts and contusions healed up in normal time but about three months after the wreck plaintiff began to suffer from dizzy spells, at which time he would become unconscious and "things seemed to swim, where I am, around me, and I have to sit down where I am, and it leaves me with a dull headache, a dull pain over the eyes, and back of the eyes." Plaintiff was a strong, healthy young man before the accident and never had a sensation of this kind. These spells lasted from ten to fifteen minutes and the headaches following from two or three hours to half of a day. They came on "once a week to two or three times a week." They were more frequent at the time of the trial than when they first began. The medical testimony shows that these spells are symptoms of a brain disorder. "Petite mal," which is a form of epilepsy, and that this ailment would probably get worse and that one of the characteristics of such an ailment was that it would not come on immediately after the suffering of a blow but would appear about the time plaintiff testified his trouble began.

The evidence shows that the hearing of plaintiff's left ear is impaired twenty-five per cent. Plaintiff received injuries to his left kidney. His attending physician took two samples of his urine and tested it. He found blood and white corpuscles in the first sample. The second sample, taken six weeks after the first, showed that this condition had cleared up but shreds of tissue were found in the urine indicating "extra tissue that had been scaled off (the kidney) by the congestions coming away." This condition showed that the kidney was healing but "there had been a serious injury." This kidney condition caused plaintiff at the time of the trial to get up three times in the night to urinate. Plaintiff took medicine for fourteen months after the injury trying to remedy this condition.

Plaintiff received an injury to his hip. On the morning after plaintiff was injured his hip pained him so he "could hardly stoop over to lace my shoes." "I couldn't hardly get back and forth to school, but Doctor Bleil advised me, if I could possibly do it, I should keep moving." He is able to get around but at times his hip bothers him and "I can't walk the way I should. Sometimes I can't walk without limping; in doing any heavy work, in stooping, stooping over, to lift anything I can't do it, on account of my hip. I haven't's got the strength there I used to have." "It is a dead sensation, from the hip on down to the knee, as though it was partly paralyzed, or a dead feeling." The limitation of the movement of the left hip was between fifteen and twenty per cent at the time of the trial. Between the time of the injury, which occurred on the 3rd day of January, 1920, and the day of the trial, which was February 28, 1921, plaintiff lost twenty pounds in weight and was twenty pounds under his normal weight. Plaintiff also suffered a nervous shock and whenever he rides on trains he has "a nervous feeling" whenever it "bumps or jars any, why it just keeps my nerves on edge." There was medical testimony tending to show that the ills that plaintiff suffered at the time of the trial would be premanent.

Upon completion of his automobile course plaintiff went to his home in Sterling, Illinois, but did nothing for a period of about four weeks. He then opened a "small garage" for repair work and supplies. He was operating this at the time of the trial. He had no assistance but did the work himself, opening his garage at 7:30 o'clock in the morning and closing it at 8:30 in the evening. At the time of the trial he still suffered with his back. While he was able to do his work, on account of his hip he was not able to do any heavy work and while stooping over to lift anything had not the strength to lift a heavy object. We do not think that the verdict is such an amount as to warrant an interference with it by this court.

The judgment is affirmed. All concur.