Cecil F. SHOPEN, Appellant,

v.

Joseph M. BONE, Jr., Trustee in Bankruptcy of John D. Schindler, Bankrupt, Appellee.

No. 17369.

United States Court of Appeals Eighth Circuit.

March 9, 1964.

George J. Winger, Kansas City, Mo., Samuel H. Liberman, St. Louis, Mo., for appellant.

Everett S. Van Matre, Mexico, Mo., for appellee.

Before VAN OOSTERHOUT, MATTHES and MEHAFFY, Circuit Judges.

MEHAFFY, Circuit Judge.

This is an appeal from the District Court's decision affirming the Referee in Bankruptcy's disallowance of a claim against Joseph M. Bone, Jr., Trustee in Bankruptcy for John D. Schindler, bankrupt.

Claimant, Cecil F. Shopen, a real estate broker and auctioneer with offices in St. Louis, Missouri, urges that the Referee and District Court erred as a matter of law in refusing to recognize an unsecured claim against the bankrupt's estate emanating from a valid contract of employment between Shopen Realty Auction Company and the bankrupt.

The facts in main are uncontroverted.

Schindler and his wife owned a farm consisting of 2,015 acres located in Audrain County, Missouri. There was a first deed of trust against this land held by The Equitable Life Assurance Society of the United States. Schindler became in default under this loan and he and his attorney, Ralph Alexander of Columbia, Missouri, advised Equitable that arrangements would be made to pay the delinquencies on the loan or the property would be sold by February 1, 1961.

Sometime prior to January, 1961, the bankrupt and his wife made contact with the claimant, and on January 5, 1961, Shopen went to Columbia, Missouri and to the Schindler farm for an inspection and met with the Schindlers and their attorney. A contract for employment of claimant as auctioneer for sale of the Schindler farm was prepared and signed by the parties in the office of Attorney Alexander. The first parties in the contract were Schindler and his wife, and second party was Shopen Realty Auction Company. It provided in part:

"Parties of the first part do by this contract employ and authorize Shopen Realty Auction Company to arrange for and conduct a public auction on the following described real estate, to-wit:

"2015 acres improved in Audrain County, Missouri.

" * * * (T)he parties of the first part agree to pay Shopen Realty Auction Company for their services in conducting said auction of the above described real estate as follows:

"Five Percent of the last bid made or received plus cost of advertising, said sum not to exceed the sum of $2,500.00, and said commission and advertising due and payable on day of auction."

In addition to providing that first parties agree to furnish merchantable abstract of title and deliver premises by warranty deed, the contract's disputed paragraph stated:

"*First parties hereby authorize second party to accept the proceeds of the sale of above property* and to insert the name or names of the purchasers of said property in the warranty deed as grantees, said deed being signed and left in the hands of Ralph L. Alexander * * * as part of the consideration for their services rendered herein; *and to completely close the transaction, remitting the proceeds from sale price, less expense as set out above,* plus abstracting fees, revenue stamps and any delinquent taxes." (Emphasis supplied.)

The contract contained no stipulation requiring claimant to obtain a fixed price for the realty to be auctioned. Furthermore, claimant made no oral guarantees to the owners to this effect. After the employment contract was executed, claimant prepared an illustrated brochure advertising the farm and setting forth details of the sale which was mailed to over three thousand people. The mailing list included all Missouri banks, the South Central Business Association and other selected groups. The brochure described the terms of the sale as follows:

> "This splendid farm is selling for cash over the existing balance on an original $300,000.00 loan—said balance being $250,000.00. Favorable rate—5½ per cent—long-term loan. Buyer deposits day of sale—15 per cent of the purchase price, with balance above existing indebtedness payable on or before 30 days. All 1960 taxes paid. Possession on March 1, 1961. Buyer gets half of 230 acres of wheat now growing on farm, and seller will apply liquid nitrogen needed and combine wheat, each taking one-half. If desired, splendid manager of entire operation can be furnished. Farm selling as a total of 2015 acres. Abstract of title and warranty deed furnished purchaser."

Total advertising expense paid out by claimant amounted to the sum of $2,188.93.

On January 27, 1961, an auction was conducted by claimant at the City Hall in Centralia, Missouri, at which three hundred and fifty people were present. Prior to the auction sale a deed had been executed in blank by the grantors, Mr. and Mrs. Schindler, and left with their attorney, Alexander. At the conclusion of the auction, a written contract was executed in Alexander's office between the Schindlers and three vendees whose joint bid of $359,000.00 was high. The contract called for a down payment of $53,850.00 which was made and deposited with Alexander.

The real estate contract provided that the sellers furnish the buyers a complete abstract of title within twenty days of the sale. The buyers had ten days thereafter to examine the abstract. If the title was found to be good, the deed conveying the property free and clear of encumbrances and liens was to be delivered forthwith, but if the title proved defective, the buyers were required to specify their objection in writing within ten days after delivery of the abstract. The sellers had thirty days thereafter to rectify any defects. If the defects could not be rectified within such time, it was provided, "this contract shall be null and void, and the money deposited" returned to the buyers. The contract stipulated all such tenders pertinent to closing of the title were to be performed at the office of the vendors' attorney.

It subsequently developed that the sellers could not give clear title, because the $359,000.00 sale price was insufficient to pay off existing liens. In addition to the loan mentioned in the brochure of sale, which was the deed of trust held by Equitable, there was, unbeknown to claimant at the time of the auction, a second deed of trust securing notes held by two banks. This latter deed of trust had a balance due of approximately $52,000.00 and the Equitable mortgage had a balance due of $318,666.11 at the time trustee in bankruptcy subsequently sold the property under order.

Due to the combination of the defective title and Schindler's subsequently filing a petition in bankruptcy on March 13, 1961, the auction sale was never consummated. The real estate contract was subsequently rejected by the trustee in bankruptcy as an executory contract, the purchasers were returned their deposit of $53,850.00, and the trustee in bankrupty, by private negotiation, sold the realty to other parties for $425,000.00. One of the purchasers at the private sale was one of the unsuccessful bidders at the auction. According to appellant, the trustee subsequently allowed the first purchasers' claim against the bankrupt's estate for breach of the real estate con-

tract for an amount equal to the difference between their bid and the $425,000.00 received by private sale.[1]

Based upon five per cent of $359,000.00, the highest bid at the auction, the commission allegedly due Shopen was $17,950.00 plus $2,188.93 for advertising expense, or a total of $20,138.93.

The Referee found that the claim for advertising expenses in the amount of $2,188.93 was allowable but denied the claim for commission. The District Court confirmed the Referee's order finding that the employment contract precluded claimant from earning his commission in the event the sale was not consummated because the property failed to bring an amount sufficient to pay off all existent liens thereon.

This appeal turns upon two decisive questions: (1) Did the employment contract expressly condition the real estate broker's commission upon his consummation of the conveyance of title to the property previously sold at auction? (2) Was the real estate broker chargeable with advance knowledge of the property's defective title which prevented consummation of the sale so as to estop him from recovery of his commission?

An employment contract for the sale of realty is to be construed from the intent to be gathered from the language within the four corners of the instrument, Spears v. Carter, 224 Mo. App. 726, 24 S.W.2d 717 (1930), and an auctioneer, in selling property for another, is the vendor's agent, with rights and liabilities governed by the general principles of the law of agency. Pasley v. Ropp, 334 S.W.2d 254, 80 A.L.R.2d 1231 (Mo.App.1960).

While Missouri recognizes the general principle entitling an agent or broker to his commission once he has produced a purchaser ready, willing and able to buy on the terms proposed by the vendor, such a right, by express stipulation, may be contingent to vesting upon the occurrence or performance of other conditions or duties set forth in the contract of employment. Tant v. Gee, 348 Mo. 633, 154 S.W.2d 745 (1941); Bowman v. Rahmoeller, 331 Mo. 868, 55 S.W.2d 453 (1932); Pratt v. Irwin, 189 S.W. 398 (Mo.App.1961). And so it has been held that a broker had not earned his commission where he did not procure a purchaser ready, willing and able to pay a fixed price for the property as provided in the contract. Tant v. Gee, supra, Rosenblatt v. Multin, 222 S.W.2d 587 (Mo.App.1949); Proctor v. Gentry, 214 S.W.2d 746 (Mo.App.1948). Likewise, failure to produce a purchaser within the employment contract's specified time period or before its cancellation will defeat the broker's right to a commission. Bowman v. Rahmoeller, supra; Clarkson v. Standard Brass Mfg. Co., 237 Mo.App. 1018, 170 S.W.2d 407 (1943). In these instances the conditions preceding vesting of the broker's right to a commission failed to materialize due to either the reluctance of the purchaser to perform or the fault of the broker himself. However, we have found no authority for the proposition that even should we hold under the contract that claimant's fee was contingent upon consummation of the sale, his right to compensation for services performed may be defeated by his employer's own inability to tender a merchantable title. To the contrary, cases abound which hold that the broker has earned his commission where consummation of the sale is prevented by default of the vendor. Prugh v. Tyrrell, 209 Mo.App. 582, 235 S.W. 143 (1921); Smith v. Stubb, 293 S.W. 496 (Mo.App. 1927); Maddux v. St. Louis Union Trust Co., 186 Mo.App. 138, 171 S.W. 669 (1914); Vining v. Mo-La Oil Co., 312 Mo. 30, 278 S.W. 747 (1925); Knisely v. Leathe, 256 Mo. 341, 166 S.W. 257 (1914); Perrin v. Kimberlin, 110 Mo. App. 661, 85 S.W. 630 (1905); Keeney-Toelle Real Estate Co. v. Hillinghorst, 319 S.W.2d 675 (Mo.App.1959).

1. Appellant averred this fact is substantiated by the records of the Bankruptcy Court which is undenied by appellee. We assume, therefore, the statement to be true.

It would be grossly incongruous for the parties to have agreed, as they did in one paragraph of the contract, that the vendors bear the burden of tendering a merchantable title and then intend in another provision indicating the broker was authorized to close the sale that the latter provision operated to cancel his right to a commission for services performed upon his employers' breach of the former provision due to a defect in their title. The inconsonance of these results is apparent, for such an interpretation of the employment contract would destroy the parties' mutuality of obligation. The broker, once he had performed, would have no assurance of performance on the part of his employer who could preclude completion of the sale by arbitrarily creating a cloud on his title and thereby eliminate his obligation to pay the broker his fee. If the vendor wants this protection from payment of the broker's commission in the event his title proves defective and frustrates a completed sale of the property, he must specifically so provide in their contract of employment. See Prugh v. Tyrrell, supra; Gerhart v. Peck, 42 Mo.App. 644 (1890). If the vendors here had desired such protection, it is a reasonable assumption that it would have been clearly specified in the employment contract they executed in the office of their attorney. While this agreement "authorized" the claimant to close the transaction, remitting the proceeds less expenses, their own attorney was obligated and did in fact attempt to handle all matters necessary to the actual conveyance of title. It would place a strained construction on the parties' use of the word "authorize", which ordinarily denotes a power to act as opposed to an obligation to act, to hold in effect that the broker's commission remained dependent upon fulfillment of the details of the transaction's closing once this authority was alternatively delegated to the vendors' attorney pursuant to the brokerage agreement. This Court must enforce the parties' will as expressed in their written argument and

not reform that instrument to reach results unprovided for.

We also feel that the District Court erred in finding that securing a purchaser within the intendment of the agreement obligated the claimant to sell the property at a price sufficient to satisfy all liens and his fee, or otherwise his commission was unearned.

Claimant was not bound under his contract to obtain a purchaser willing to buy the property at any fixed sum. However, he was aware from information furnished him by his employer that the purchaser procured must offer a price in excess of the amount of the known lien against the property held by Equitable before the prospective vendee's offer would be acceptable to the vendors. The best bid obtainable by claimant was $359,000.00 which was accepted by the vendors in the subsequently executed real estate contract. This bid was sufficient to satisfy Equitable's lien, described in the brochure advertising the auction, as well as pay the claimant's five per cent fee. Thereafter, when the second lien came to light and the sale collapsed as a result thereof, it is argued that the claimant could no longer remit the proceeds less expenses and commission from the sale in compliance with his agreement and thereby lost his right to a fee.

Respectable authority exists which holds that the mere fact the broker was to receive his compensation out of the proceeds of the sale does not make his right to compensation dependent at all events on the completion of the sale. If he performed his part of the contract by obtaining a buyer acceptable to the vendor, and the trade was defeated alone by the inability of the vendor to make a good title, then he is entitled to receive compensation for his services even though it cannot be paid as agreed out of the purchase money. Finch v. Guardian Trust Co., 92 Mo.App. 263 (1901); Perrin v. Kimberlin, supra; Vining v. Mo-La Oil Co., supra.[3]

2. But compare with Staples v. O'Reilly, 288 S.W.2d 670 (Mo.App.1956) wherein

the broker was denied his commission for failing to consummate a sale as express-

 The remaining issue concerns estoppel of the broker to claim his fee as earned where proven he had advance knowledge of defects in his employers' title which would cause the sale to fail. This established precedent is bottomed upon sound reasoning. The broker takes the contract to procure a purchaser ready, willing and able to buy what the broker's principal has to sell. If the broker knows that the principal has a title which the purchaser will not accept, then he has not produced a purchaser in accordance with the terms of his agreement.

 Here, actual, not constructive, notice is required for estoppel to apply, and ordinarily, it is not incumbent upon the broker to inquire as to the existence of any defects.

 The record is devoid of any evidence that at the time the employment contract was signed and the auction performed, the claimant had any knowledge of the existence of the second deed of trust causing the defect in the vendors' title. It is safe to assume that the vendors were aware of this encumbrance executed by themselves. For some unexplainable reason, they chose not to inform the claimant of its existence prior to the auction sale and execution of the real estate contract.

The only Missouri appellate decision to be found squarely in point required the vendor, under similar circumstances, to pay his broker a commission on the theory that the duty lies with the vendor to inform the broker of any existent defect if he desired protection from payment of the latter's fee in the event the defect prevented consummation of the sale. Smith v. Stubb, supra. On pages 497–498 of the opinion, the court held:

> "There is no evidence * * * that defendant ever notified plaintiffs that the lands he employed them to sell were incumbered by a mortgage, or that they had any knowledge

thereof prior to the time the written contract between defendant and (purchaser) was entered into. * * While plaintiffs' employment was general, and they were required to find a purchaser 'satisfactory and acceptable' to defendant, that did not mean they were bound to overcome unusual conditions relative to defendant's title of which they were uninformed. If there were leases, mortgages, or other entanglements on defendant's lands in regard to which he desired to be protected in the manner stipulated in the contract, it was defendant's duty to notify plaintiffs in regard thereto at the time of employment, or at least before a purchaser might be procured under the original terms of employment. And a broker's right to a commission * * * is not dependent upon the consummation of the contract between his principal and the purchaser, unless the contract fails of consummation through the broker's fault, or when there has been an express stipulation to that effect."

See also Politte v. Wall, 256 S.W.2d 283 (Mo.App.1953); Bledsoe v. Lombard, 194 S.W. 518 (Mo.App.1917); Keeney-Toelle Real Estate Co. v. Hillinghorst, supra.

Applying this criterion to the facts of the instant case, we see that the vendors clearly neglected to inform the claimant of the fatal defect in their title, and their contract of employment contained no express stipulation conditioning payment of the claimant's fee upon his consummation of the sale, but rather made it due and payable the day of the auction when the buyer's offer was accepted. The claimant is, therefore, not estopped to claim his commission.

Summarizing, the contract of brokerage does not require the broker to sell for a fixed price or price sufficient to pay all liens. The vendors' attorney did not

---

ly provided in his contract of employment which stated his commission was to be the balance of a fixed purchase price

and was payable within thirty days after the closing of the transaction.

incorporate such a condition in the contract, and the Court is not at liberty to rectify this omission in the contract's terms. Furthermore, the record evidence is undisputed that the vendors executed a binding contract of sale with the purchasers secured by claimant, subsequent to the auction sale. The record evidence also undisputedly reflects that claimant had no knowledge of the second lien and was convinced the auction sale price sufficed to pay the Equitable first lien of which he was aware, all charges incident to the sale, and his commission. Under such circumstances, we have no alternative in view of the prevailing law of Missouri but to reverse the decision of the District Court with directions to allow appellant's unsecured claim for the full amount of his commission.

Reversed with directions.